## Cropper, et al. v. Gaar's Exor., et al.

(Decided December 20, 1912).

Appeal from Jefferson Circuit Court
(Chancery Branch, First Division).

1. Wills—Directing Sale of Real Estate—When Interest of Each Child Treated as Legacy in Money Payable from Proceeds of Real Estate.—If a will contain a direction to the executor to sell the real estate devised at the death of a life tenant and divide the proceeds equally among the testator's children, the latter take a vested remainder in the estate devised. But the interest of each child will be treated as a legacy in money, payable from the proceeds of the real estate when sold following the death of the life tenant.

2. Wills—Construction of—Where Land is Directed to be Sold and Turned Into Money—When Conversion Into Money Takes Place.— It is a well settled rule in the construction of wills that where land is directed to be sold and turned into money, courts of equity in dealing with the subject will consider it personalty, and, treat its conversion into money as having taken place immediately after the death of the testator.

3. Wills.—The interest of a remainderman under such a will, being merely an interest in money, could not be subjected to an execution levy and sale in favor of a creditor of such remainderman, either before or after the death of the life tenant.

WM. McKEE DUNCAN for appellant.

ARTHUR M. WALLACE for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

Raleigh Kendall, a resident of Jefferson County, Kentucky, died in 1870, testate, and on February 13, 1871, his will was duly probated in the Jefferson County Court.

The will is as follows:

"I, Raleigh Kendall, being sound in mind at this time make this my last will for the better disposition of my property for the benefit of my family. I will all my real estate and personal property to my wife, Lucinda Kendall to have and to hold the same for her use and my minor children during her life, and after her death the whole property, real and personal, is to be sold and equally divided among my children, except the house and lot on the south side of Walnut Street, between Center and Sixth Street, which I will to my youngest daughter, Anna Bell Kendall, for her share of my estate. I appoint my son Edward Kendall as executor for the better purpose of executing this, my will."

On the same day that the will was admitted to probate, the testator's son, Edward Kendall, named in the will as executor, duly qualified as such. On June 9, 1879, Edward Kendall was, by an order of the Jefferson County Court removed as executor, and H. S. Irvin appointed administrator de bonis non, with the will annexed, of the testator's estate, who duly qualified as such and continued to act until May 23, 1907, when he resigned and John C. Miller was by the same court appointed administrator de bonis non, with will annexed, of the estate.

Edward Kendall died in 1905, intestate, survived by two children, the appellants, Lorena Cropper and Lou Kendall Stephens. His mother, the widow of the testator, died in 1906. Shortly after the appointment and qualification of John C. Miller as administrator de bonis non, with the will annexed, of Raleigh Kendall's estate, he, in his fiduciary capacity, sold the devised real and personal estate as directed by the will and brought this action for a settlement of his accounts and for the purpose of distributing the proceeds thereof among the testator's children, according to the provisions of the will. All the devisees were made parties, as were the children of Edward Kendall deceased.

It was alleged in the petition that the heirs at law of S. A. Gaar were setting up some sort of claim to whatever interest Edward Kendall, deceased, had he lived, would have been entitled to receive from the estate as a devisee under the will. Hence they, together with the executor of the will of S. A. Gaar, were also made defendants and called upon to assert their alleged claim; which they did by filing an answer that was made a cross petition against the heirs at law of Edward Ken-

dall, the devisees under the will of Raleigh Kendall, deceased, and the administrator de bonis non, with the will annexed, of the estate. It was alleged in the answer and cross petition that Edward Kendall in 1878 executed a note to one Early Smith, for $600.00, upon which S. A. Gaar became his surety; that when this note became due, Edward Kendall, the principal, failing to pay it, suit was brought thereon by Smith, the payee, and judgment obtained against Kendall and Gaar, the surety; that soon thereafter execution issued upon the judgment which the sheriff of Jefferson County levied upon what, in the execution return, was called the one-seventh undivided interest of Edward Kendall in the real estate left by his father Raleigh Kendall, deceased, and at a sale, July 1, 1878, under the execution, of such supposed interest, S. A. Gaar became the purchaser thereof at the price of $450.00, for which he executed bond payable to Smith, and, in addition, paid him the residue of the judgment amounting to $383.00. That Smith thereupon assigned him that much of the judgment; and that subsequently, on February 27, 1885, S. A. Gaar caused the sheriff of Jefferson County to execute to him a deed conveying, what was therein represented to be, the one-seventh undivided interest of Edward Kendall in the real estate in question, sold under the execution, and this deed was put to record in the office of the clerk of the Jefferson County Court.

It was further alleged in the answer and cross petition that S. A. Gaar, by his purchase at the execution sale and the deed subsequently executed to him by the sheriff, became the owner of Edward Kendall's interest in the real estate left by his father, Raleigh Kendall, deceased, and that the fee simple title thereto upon the death of S. A. Gaar, passed to his children and heirs at law, which entitled them to a one-seventh part of the proceeds realized from the sale of the Raleigh Kendall lands. It was asked in the answer and cross petition, that if the court should be of opinion that no title passed to S. A. Gaar by the execution sale and sheriff's deed, it be adjudged that a lien was acquired by virtue of the levy of the execution, which would entitle his heirs to have applied to the payment of the execution debt one-seventh of the proceeds arising from the sale of the Raleigh Kendall lands. The appellants, children of Edward Kendall, by answer to the petition of the administrator de bonis non, with the will annexed, of Raleigh

Kendall's estate, and the cross petition of the heirs at law and executor of S. A. Gaar, attacked the validity of the execution levy and sale, and also the deed from the sheriff to S. A. Gaar, alleging that each was void and that no lien was acquired by virtue of the execution levy or sale upon any part of the proceeds of the real estate left by Raleigh Kendall, deceased, and asking that the sheriff's deed be canceled. To this end the answer was made a cross petition against the executor of the will of S. A. Gaar, his heirs at law, the administrator de bonis non, with the will annexed, of Raleigh Kendall and his devisees. It was further alleged in their answer and cross petition that Edward Kendall during his life time owned no interest in the real estate left by his father, Raleigh Kendall which could be levied upon or sold under execution; that under the will of the father he took no interest in the real estate devised, but only a vested remainder in an undivided seventh of the proceeds thereof, the enjoyment of which was postponed by the will until the death of the testator's widow which was fixed as the time of the sale of the real estate for a division of the proceeds among the devisees; and that the widow's death did not take place until after his death. Therefore, his interest was never such an interest as could be levied upon or sold under execution. The answer also relied upon the statute of limitations, which was pleaded in bar of the claim asserted by the Gaar heirs.

The court below overruled a demurrer filed by appellants to the answer and cross petition of the appellees, S. A. Gaar's executors and heirs at law, and sustained a demurrer filed by the latter to the answer and cross petition of the appellants. Appellants excepted to these rulings and refused to plead further; whereupon the court rendered judgment dismissing their cross petition, declaring that Edward Kendall at the time of the levy of the execution in favor of Early Smith owned an undivided one-seventh interest in the real estate devised by Raleigh Kendall, subject to the widow's life estate; that S. A. Gaar by virtue of his purchase at the execution sale, acquired a lien on such interest for what was due him of the execution debt, which entitled appellees to receive a seventh part of the proceeds of the real estate devised; and this seventh the administrator, with the will annexed, was ordered to pay them. From that judgment this appeal is prosecuted.

In our opinion the judgment appealed from did not properly determine the rights of the parties. The will of Raleigh Kendall devised his entire estate, real and personal, except a house and lot in the city of Louisville given his youngest daughter as her share of his estate, to his widow for life, and directed that at or after her death it should all be sold and the proceeds equally divided among the testator's children, exclusive of the youngest daughter mentioned, whose share was given her in the city house and lot. The will appointed the testator's son, Edward Kendall, executor and by clear implication conferred on him the power to sell the devised estate for a division of the proceeds as by the will directed.

It is clear that Edward Kendall was one of the seven children to share in the proceeds of the estate devised, after the death of the testator's widow. He therefore took under the will, a vested remainder, subject to the life estate of the widow, not in the real or personal estate as such, but in its proceeds; hence his right to receive his one-seventh part of the estate devised was by the will postponed until there could be a sale made of the property after the death of the widow, and, as his death occurred before that of the widow and consequently before the time when the property devised could be sold and divided, as directed by the will, his undivided one-seventh interest therein descended under the Statute of Descent and Distribution to his two daughters, the appellants, Lorena Cropper and Lou Kendall Stevens.

It is a will settled rule in the construction of wills, that when land is directed to be sold and turned into money, courts of equity in dealing with the subject will consider it as personalty, and, to that end, treat its conversion into money as having taken place immediately following the death of the testator. An excellent illustration of our meaning may be found in the case of Hocker, et al. v. Gentry, et al., 3 Metcalf, 463, wherein it was held that if a direction to an executor to sell land or slaves is positive, the right of the legatee will in equity be regarded as a right to money from the time of the testator's death, though the time of sale is remote and the conversion cannot, in fact, be made until the time of sale arrives. In that case there was a devise "to the children of my said son, Thomas J. Gentry, the following slaves (naming them). These slaves and their income I direct my executor to hire out until the young-

est of said children attain the age of twenty-one years; then I direct my executor to sell all of said slaves, and divide the proceeds equally among said children.''

There were four legatees, one of them being a daughter, who married after the death of the testator and died, before the youngest child attained the age of twenty-one years, survived by her husband. It was held that the legatees took a vested interest in the proceeds of the slaves which, in equity, was to be regarded as a right to money from the time of the testator's death; and that the husband of the legatee who died, was entitled, in her right, to one-fourth of the proceeds, the division to take place at the time mentioned in the will at which the legatees were also entitled to the hire of the slaves.

The same doctrine was announced in Gedges v. Western Baptist Theo. Ins., 13 B. Monroe, 529, the opinion declaring, in substance, that where a will peremptorily directs the sale of land, a court of equity regards the land as converted into money even before the sale; moreover, that a gift of the proceeds of land directed to be sold, is a legacy, and its transmissibility determined by the rules applicable to legacies of money or other personalty.

In Porter v. Porter, &c., 135 Ky., 813, a more recent statement of the rule referred to is to be found. In that case the testator directed in his will that at the death of his wife his land be sold and the proceeds equally divided between all of his children. By another clause of the will the executor was given power to sell the land and divide the proceeds between the children equally. The action was instituted by the children after the death of their mother to obtain a sale of the land and division of the proceeds as directed by the will. In the opinion it is said:

''The doctrine that land directed to be converted into money by a testator is to be regarded as a money legacy is well established and has been long recognized by the courts of this State, subject, it is true, to an election by the devisees whether to treat it as realty or personalty; but, in the absence of an election to regard it as realty the law stamps it as a money bequest. Jarmon on Wills, 756; Arnold's Exr. v. Arnold's Heirs, 11 B. Monroe, 89; Williams on Executors, 767; Bowling's Heirs v. Dobyn's Admr. 5 Dana, 434; Field's Heirs v. Hallowell & Co., 12 B. Monroe, 517; Hocker, et al. v. Gentry, et al., 3 Metcalfe, 473.''

After commenting at length upon the case of Raw-
ing's Exr. v. Landes, &c., and Holeman, &c. v. Landes,
2 Bush, 158, and demonstrating their applicability to the
case in hand, the court in the opinion further said:

"Appellee's counsel admit the correctness of the
rule above stated, but claim there has been a reconver-
sion by the devisees; that they elected to take the land,
instead of the proceeds thereof. It is true that it is a
well established rule that the devisees may elect to do so,
but the facts do not support the contention of appellee's
counsel in this case. The authorities seem to consider
it necessary, in order to create a reconversion of prop-
erty, for all the devisees to join in the election, which
was not done in this case. On the contrary, this action
was brought to carry out the intention of the testator
by selling the land and dividing the proceeds as directed
by the will. It is true Sam (Porter) received many
deeds or writings from his brothers and sisters which
had the effect to convey or transfer to him their inter-
ests in the land or the proceeds thereof, but this fact
does not show an election to change the devise from one
of personalty to one of realty. Some of the heirs did
not convey their interest to any one, but held it under
the will until their mother's death."

The same question arose in Miller's Exr., &c. v. Sa-
gesser, 30 R., 837. F. S. Miller's will devised the 250
acre farm on which he lived to his wife for life; another
clause of the will disposed of the farm after the widow's
death as follows:

"After the death of my wife, I will and direct that
the farm on which we reside shall be sold, and the pro-
ceeds divided among my children so as to make them all
equal, and I authorize my said executor to convey the
same to the purchaser."

Nannie Rosa Miller, a daughter of the testator, after
the death of the latter intermarried with A. J. Sages-
ser. She, however, died intestate while her mother, the
testator's widow, was still living, but left surviving her
a son and her husband. Within a few months of her
death the son also died, and his death was followed by
that of F. S. Miller's widow. After her death, A. J. Sa-
gesser in his own right and as administrator of his de-
ceased wife and son, brought suit against F. S. Miller's
executor and the legatees under his will, for a settlement
of the executor's accounts and a sale of the farm, which
had been devised the testator's widow for life, and also

for a judgment in his own right, or in his fiduciary capacity, for that proportion of the proceeds of the farm which would have gone to his wife had she been living at the time the suit was brought. The executor resisted the claim of Sagesser, but the circuit court sustained it, and the executor appealed. On the appeal this court affirmed the judgment upon the ground that the interest of Sagesser's wife, in the farm referred to, was, under the will of her father, an interest in the proceeds of the land, and that the land, in so far as it related to the testator's children, was under the doctrine of equitable conversion, changed from realty to personalty at the date of the death of the testator, when the will became effective. The opinion, after citing Rawlings v. Landes, Hocker v. Gentry, supra, and numerous other authorities, closes with the following statement:

"Under these authorities there is no doubt about the principle of equitable conversion. This 250 acres of land was changed from real estate to personal property when the will of F. S. Miller became effective. At the death of her father, Nannie Rosa Sagesser took a vested interest in the proceeds of the home farm under her father's will; which, by the will, and under the authorities cited, was converted into personalty. When she died intestate it passed to her surviving husband and child under the statute; and when this child died, leaving no issue, the whole of the interest passed to appellee A. J. Segasser."

The above case, and the several other authorities to which we have referred, are conclusive of the instant case, as the doctrine of equitable conversion they announce establishes beyond doubt appellants' contention, that Edward Kendall's interest in the estate devised by his father's will was not an interest in the tangible property itself, whether real or personal, but an interest in its proceeds, that is, the money for which it might be sold; and this being so, it is equally certain that such interest was not subject to levy or sale under an execution in favor of Smith or his assignee, S. A. Gaar, the appellee's ancestor. Therefore both the levy and sale were void. Mudd v. Durham, 17 Rep., 1202; Roberts' Exors. v. Brinker, 4 Dana, 570. It is also well settled that "where land has been equitably converted into money a judgment against the beneficiary does not create any lien upon his interest in the land, nor is his interest subject

to sale on execution." American & English Encyclopedia of Law, 476.

Whether Smith or Gaar could, by attachment, have subjected Edward Kendall's interest in the devised estate to the payment of the judgment obtained by Smith against him, it is unnecessary to decide, as that question is not before us. Such interest cannot now be subject to the satisfaction of the appellees' judgment, for more than fifteen years having elapsed since execution was issued upon it, it is barred by the statute of limitations.

There is no merit in the estoppel pleaded by appellees. The fact that Edward Kendall made no objection to the attempted levy of the Smith execution, or the sale thereunder, or that he thereafter took no steps to have the levy and sale quashed, gave no validity to the void levy or sale; nor was there any act upon his part which can be said to have constituted an election to take his interest under the will in land, instead of its proceeds; indeed, in view of the conclusion expressed in Porter v. Porter, &c., supra, an election to do so could not have been made by him, without a like election on the part of the other devisees under the will.

It follows from what we have said that as Edward Kendall died before there could be, under the provisions of his father's will, a sale of the property therein devised, appellants, as his only heirs at law, became at his death, entitled under the statute to the undivided one-seventh interest in the proceeds of the devised estate, of which he would have been the beneficiary, had he lived.

For the reasons indicated the judgment is reversed and cause remanded with directions to the circuit court to enter judgment in conformity to the conclusions expressed in the opinion. Whole court sitting.