CASE 55—PETITION EQUITY—MAY 29.

99 317
e112 707

# Trustees Church Home v. Morris.

APPEAL FROM JEFFERSON CIRCUIT COURT, CHANCERY DIVISION.

1. WILLS—EFFECT OF RENUNCIATION BY WIDOW.—Where a testator in his will gives the whole net income from his estate to his wife during her life, and provides for the distribution thereof at

her death, upon her renunciation of the provisions of the will, the general rule is that the legacies which were to have been effective at her death, become immediately due, unless a contrary intention of the testator is manifest.

2. INTEREST ON LEGACY—FROM WHEN COMPUTED.—Although the legacy became due upon the renunciation of the will by the widow, there being a contest over the will the legacy could not be safely paid till it was decided, and interest should only be computed from that time.

HELM & BRUCE FOR APPELLANT.

1. The renunciation of the will by the widow had the effect to precipitate the maturity of the legacies. (Peynado v. Peynado, 82 Ky., 5; Wood v. Wood, 1 Met., 512; Curling v. Curling, 8 Dana, 38; Revised Statutes, chapter on Wills, p. 696; Gen. Stats., chap. 50, Art. 2, Sec. 2; Timberlake v. Parrish, 5 Dana, 345; Story's Eq. Jurisprudence secs. 1082, 3-4; Pomeroy's Eq. Jurisprudence, Vol. 1, secs. 468, 676 and 517; Firth v. Denny, 2 Allen (Mass.), 468; Jones v. Knappen, 22 Atl. Rep., 630; In re Ferguson's estate, 138, Penn. St., 209; Coover's Appeal, 74 Pa. St., 143; Young's Appeal, 108, Pa. St., 17; Gallagher's Appeal, 87 Pa. St., 200; In re Vance's Appeal, 141 Pa. St.; Heinman's Appeal, 92 Pa. St.; Steadfield v. Steadfield, 1 White & T. Lead Cases, 340; Brandenburgh v. Thorndike, 139 Mass., 102; Sander's Appeal, 65 Pa. St., 314; Plympton v. Plympton, 6 Allen, 178.

2. The legacies having become due the statute declares that specific pecuniary legacies shall bear interest after due.

BARNETT, MILLER & BARNETT FOR MORTON'S EXECUTORS.

1. The statute expressly provides that a legacy shall be payable one year after the testator's death, if no time is fixed; but the statute was not intended to operate so as to change the provisions of a will which expressly fixes "the time of the payment of the legacy to be at the death of the testator's wife." (Kentucky Statutes, section 2065.)

2. The testator, John P. Morton, died July 19, 1889, and his will was not established until this court affirmed the appeal on October 15, 1892 (14 Ky. Law Reporter, 360)."The establishment of the will was an essential prerequisite to the payment of the legacies." (Commonwealth v. Lillard, 4 Bush, 398; State v. Adams, 71 Mo., 620.)

3. The renunciation of the provisions of the will by the widow does

not, as between specific and residuary legatees, precipitate tne payment of the specific legacies, if it would work a hardship upon the residuary legatees.   (Timberlake v. Parish's Ex'rs, 5 Dana., 353; Wood's Adm'r v. Wood's Devisees, 1 Met., 515; Jones v. Knappen, 63 Vt., 393; Firth v. Denny, 2 Allen, 468; Plympton v. Plympton, 6 Allen, 178; Dean v. Hart, 62 Ala., 308; Roe v. Roe, 21 N. J., 255; Maskell v. Goodall, 2 Disney, 282; Sandoe's Appeal, 65 Pa. St, 316; Coover's Appeal, 74 Pa. St., 143; Young's Appeal, 108 Pa. St., 17.)

4. In Peynado's Dev. v. Peynado's Ex'or, 82 Ky., 6, relied upon as authority for precipitating the payment of the specific legacies; and also in Curling's Adm'r v. Curling's Heirs, 8 Dana, 38, cited in the Peynado case, there was no specific legacy to interfere with the residuary legacy by the precipitation.

The Peynado case also cites the Woods case, 1 Met., 512, where there was a specific and a residuary legacy, in which case this court not only refused to follow the general rule but said, "the application of this general rule will depend in *each case*, upon the effect it produced on the rights of the other devisees in the will."


SAMUEL B. KIRBY for appellees.


1. Under the circumstances of this case no interest should be collected upon the legacies.   (Kentucky Stats., secs. 4851, 2065 and 3859; Com. v. Lillard, 4 Bush, 398; State v. Adams, 71 Mo., 620.)

2. This case belongs to that class which is excepted from the operation of the general rule which precipitates the enjoyment of the legacy to the remainderman when the widow renounces the provisions of the will; the widow's renunciation did not extinguish her title, and the rule of equity which sequesters the rejected benefit and applies it to the compensation of a devisee who has been disappointed by reason of the election of a refractory donee, should prevail.   (Story's Eq. Jur., secs. 1082, 1083, 1084; Pomeroy's Eq. Jur., Vol. 1, secs. 468 and 517; Williams on Ex'ors, side page 1449; Woerner's Amer. Law of Adm'rs, 119; Firth v. Denny, 2 Allen (Mass.), 468; Jones v. Knapper, 63 Vermont, 393; Maskell v. Goodall, 2 Disney (Ohio), 282; Sandoe's Appeal, 65 Pa. St., 316; Coover's Appeal, 74 Pa. St., 143; Young's Appeal, 108 Pa. St., 17; Plympton v. Plympton, 6 Allen (Mass.), 178; Roe v. Roe, 21 N. J., 255.)

3. Next to the widow the legatees were the chief object of the testator's bounty, and his wishes with respect to them can only be carried out by withholding the legacies until the death of the

Trustees Church Home v. Morris.

widow, or until the accumulations of the estate shall make up to them their loss.

4. The testator contemplated no other scheme of distribution than that directed in his will, and to precipitate the payment of the legacies to the hurt and injury of the appellees would be a violation of his plain and expressed intention.

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

By the will of John P. Morton the net income of his entire estate was to go to his wife so long as she lived. Upon her death the estate was to be distributed as follows: (Item 4.) To J. H. Morton Morris, $5,000; Ellen M. Goodloe, $3,000; Mary Belle Griswold, $1,000; Morton Morris, Jr., $1,00´ Morton Griswold, $1,000, and Margaret M. Becker, $500.

Then follows a clause giving to the appellant, a charitable institution in Louisville, the sum of $40,000. In a succeeding clause the sum of $10,000 is set apart for the construction of buildings on the lot of the Orphanage of the Good Shepherd, where mechanical education might be furnished the inmates of the orphanage. This, however, was on condition that a like sum should be furnished by others which was not done.

By another clause the testator provided that if there still remained a surplus, and enough for that purpose, the sum of $20,000 was to go to the appellant for investment for the use of the boys cared for at the Orphanage of the Good Shepherd, and the income of which was to be paid them when they reached maturity, etc.

Then, after disposing of a fruit grove in Florida, to a number of persons, the last item of the will provided as follows: "After all the foregoing devises are provided for in full, in the order named, and there yet remains a surplus from any and all sources, the same shall be divided into five equal parts, and one part each shall pass to the first five

of the several beneficiaries named in item (4) four."

The will was probated in the county court of Jefferson county in July, 1889, but was contested, and the mandate of this court affirming the judgment below establishing the will was entered in October, 1892. Pending this contest, however, the widow renounced the provisions of the will. This was done on March 12, 1891.

By appropriate proceedings the interest of the widow has been allotted to her, the effect of which allotment, growing out of her renunciation of the will, has been to withdraw from the estate some fifty-odd thousand dollars. If the distribution of the remainder of the estate is now made the residuary legatees will get much less than if it is postponed until the widow's death, the income of it in the meantime being set apart for their benefit.

The judgment below postponed the distribution until the death of Mrs. Morton unless in the meantime the accretions of the estate shall equal the amount withdrawn by her, in which event the distribution was to be made, giving the appellant the $60,000 without interest, and giving the residuary legatees—the appellees here—the entire balance. The correctness of this judgment is the sole question on this appeal.

The only reason we conceive for the testator's postponement of the distribution until the death of his widow was that she might be provided for, and when the reason for postponement ceased, as it did upon her renunciation, we can not see why those who were the chief objects of the testator's bounty should be delayed in the enjoyment of their legacy.

While the amount of the residuary estate is lessened to the extent of the widow's allotment, they can not complain

because they were only to get what was left after payment in full of the specific legacies. They are benefited to some extent because they get their specific legacies at once, instead of waiting until the widow's death; and it is not for the court to attempt an adjustment of their profit and loss account by withholding from the principal object of the testator's solicitude the estate intended for them.

To the extent that the testator intended to *prefer* the appellees or make it *certain* that they should get a part of his estate, he provided for them in item 4 of his will; as to whether they would get any further estate, he left in uncertainty and indeed expressed a doubt as to whether there would be enough to pay the $20,000 mentioned in the will, and still further indicated a doubt in the last clause by basing the residuary devise on the questionable condition of there still remaining a surplus of the estate.

The general rule is well settled that a renunciation of the will by the widow under circumstances like the present has the effect of precipitating the maturity of the legacies.

The rule is thus stated in *In re* Ferguson's Estate (1890), 20 Atlantic Rep., 945 (Pa.): "It was held in Coover's Appeal, 74 Pa. St., 143, that devises or bequests, subordinate to a life estate in the widow and contingent upon her death or payment of which is postponed until then, become presently payable upon her election to take under the intestate laws. As to its effect upon all claims under the will her election is equivalent to her death. This is the general rule, and if there are any exceptions they must depend on the expression or unavoidable implication of a contrary intent of the testator." And the opinion of the lower court in that case that, "as the residuary legatees would be disappointed in the amount coming to them, which would be diminished

by the half of the personalty taken absolutely by the widow, they should be compensated out of the benefits intended to be conferred on the widow," was reversed under the rule announced.

We are aware that there are exceptions to the rule, but the intention of the testator must prevail so far as it can be ascertained. That is higher than any equitable rule adopted to carry out what may seem to a court a more equal or just distribution of the estate.

There is no reason whatever, in this case to depart from the direct command of the testator to distribute this estate in the manner in which he directs it to be done. It might be different if an intention was apparent to benefit certainly the residuary legatees, and the bulk of the estate was expected to be left for them. In such event they, and not others, could be said to be the chief objects of the testator's bounty, and they would be protected, not because it would be equitable or just, but because such was the intention of the testator.

The question remains, when shall the legacies begin to bear interest? We have seen that they became due upon the renunciation of the will by the widow, which was in March, 1891, but there was a contest over the will, and the executors could not pay until that was settled. This was done in October, 1892, and then, for the first time, the payment could safely be made. It seems to us interest should be computed from the last-named date.

Judgment reversed for proceedings consistent with this opinion.