## O'Rear v. Bogie.

(Decided March 4, 1914.)

### Appeal from Montgomery Circuit Court.

Wills—Construction of.—A testator devised his land to his wife for life, then to his brother A for life, providing that at his death if they should be then dead, or at their death if they should survive him, the land should be divided among the descendants of his brothers and sisters then living as though he had died intestate, A being dead, and the widow having renounced the will, held that the descendants of the brothers and sisters who would take the land if he had died intestate, then took it, it being apparent from the will as a whole that the testator only intended to provide for his widow, his brother A, and subject to this provision intended his land to go to the descendants of his brothers and sisters as though he had died intestate.

ED. C. O'REAR for appellant.

JOHN G. WINN for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—Reversing.

Joseph C. O'Rear by the first clause of his will made in 1898 directed that the funeral expenses, just debts and cost of administration should be first paid out of his estate. The second and third clauses are as follows:

"2. I bequeath to my beloved and faithful wife, Sarah E. O'Rear, all my household furniture, belonging thereto, including family portraits and apparel.

"3. I furthermore bequeath to my said wife subject to the specific bequests of this will, all of the residue of

my personal property, during her natural life. This property she is given the right to use, manage and dispose of as her wants or needs may require, and to be converted and invested as may be best suited to her desire and welfare, and of these she is to judge."

By the fourth, fifth, sixth, seventh and eighth clauses he made specific devises to different persons. The ninth, tenth, eleventh and twelfth clauses of his will are as follows:

"9. All of my real estate, being the home farm on Hinkston Creek in Montgomery County, Kentucky, where we now live as well as any other real estate that I may at my death own, I give and devise unto my said wife Sarah E. O'Rear for and during her natural life.

"If it should become necessary to sell any of it, to carry into effect the foregoing provisions of this will, she is to make the sale and conveyance of such portion as may be necessary for that purpose.

"10. If at my death my said wife be not then living, I give and devise to my brother, John W. O'Rear, the same property herein given and devised to my said wife, to be held and used for and during his natural life, and under the same limitations and conditions that she would have held same.

"11. If my said brother, John W. O'Rear, and my said wife should both survive me and my said brother John W. O'Rear be alive at the death of my said wife, then I give and devise to my said brother, the same property mentioned in the last above item (item 10) of this will, to have and use and enjoy during his natural life.

"12. Upon the death of both my said brother and my wife, or in the event they both should be dead at my death, I give, bequeath and devise the remainder of my property herein given them and not otherwise disposed of by this will, to my kindred as follows: To the descendants that are then living of my brothers and sisters as if I had died intestate.

"All my brothers and sisters (save John W. O'Rear) being now dead, the said property is directed to go to the children then living of my said brothers and sisters, and to the then living descendants of such of them as are then dead. The said descendants to then take what their respective ancestors would have taken if they had then been alive. * * * When it becomes to a division of

the residue of my estate after the death of my said wife and brother, I empower the executor hereof, who may be living or if none living, then the administrator appointed by the court, 'to sell and convey the said land herein devised and to apportion the proceeds thereof among those entitled thereto, provided said representative shall deem it best to do so, and a majority of those entitled to receive same and who are of age to contract, and free from legal disability, shall assent thereto in writing.''

The testator's brother, John W. O'Rear, died; his widow renounced the will. Dower was assigned her in the land. After this she sold and conveyed her dower to the appellee, Ed. C. O'Rear and those who were the heirs at law of the testator and who would have taken his estate had he died intestate, also conveyed the property to him. He sold the land to Anderson Bogie. The widow is still living and Bogie being doubtful whether the title of Ed. C. O'Rear was good, declined to accept the deed. Thereupon this suit was brought. The circuit court held the title of Ed. C. O'Rear not good. He appeals.

It is well settled that if property be devised to A for life with remainder to B and the remainder to B is vested, if the life estate is terminated in any way as by the renunciation of the will by the widow, the remainder is precipitated and takes effect in possession then. (Curling's Admr. v. Curling's Heirs, 8 Dana, 38; Wood's Admr. v. Wood's Devisees, 1 Met., 512; Peynado v. Peynado, 82 Ky., 5. But it is insisted that this rule cannot be applied where the remainder is contingent, and that as the devise over is to the children then living of the testator's brothers and sisters, and to the then living descendants of such of them as are then dead, the descendants to take what their respective ancestors would have taken if they had been alive, the persons who will take the estate at the widow's death, cannot be known until her death and therefore the remainder is contingent and cannot be accelerated by her renunciation. Augustus v. Seabolt, 3 Met., 156, is relied on. In that case the testator devised his farm to his wife for life. He also provided that if she should marry again, she should have a certain part of the farm only, and that at her death the whole farm should be divided between the children of four brothers ''or such of them as may be living at the

time of her death." The widow married and the question arose as to who was entitled to the remainder of the farm outside of that part which by the will she was to hold if she married. It was held that the testator had died intestate as to this part of his estate and that the farm could not be divided until the death of the widow. The case turns in the end upon the construction of the will which was there before the court. It will be observed that in that case the testator had provided for the contingency which had occurred. He had said in his will what part of the farm he wished his widow to take in case she married, and he had also said in his will that the whole tract of land was to be divided at her death. He had provided for only one division of the tract of land and he had failed to provide in his will what should become of the remainder of the land outside of that to be held by the widow in case she married. The will clearly did not contemplate two divisions of the land and the persons who would take in the division provided for by the will could not be known until the death of the widow. But that is not this case. The testator here says that upon the death of his brother and his wife, or in the event they both should be dead at his death the remainder is then to take effect as if he had died intestate. The word "then" refers to his death, if they should both be dead at his death, or to their death if they should survive him. We must give some force to the words "as if I had died intestate" as well as the word "then." The purpose of all construction is to effectuate the intention of the testator. All parts of the will are to be read together and the intention of the testator as drawn from its four corners must control. When the testator directed that his property should go as if he had died intestate, he evidently had in mind the statute of descent and distribution under which those take who are in being at the time the property descends. He did not have in mind providing for such descendants of his brothers and sisters as should survive a certain period; he did not have in mind the keeping of his estate together until a certain period and a distribution of it then to those who might be then living of the descendants of his brothers and sisters, for he directed that the property should vest at his death if his brother John and his wife died before his death. What he had in mind was simply a provision for his wife and his surviving brother,

and subject to this he desired the estate to go to the descendants of his other brothers and sisters as if he had died intestate. He did not provide as in the Augustus case what should happen if his widow renounced the will after the death of his brother John. The thing that has happened is a contingency which the will does not provide for in any way and what effect should be given to the will in this contingency must be determined by the intention of the testator expressed in his whole will. We think there would be little doubt about the meaning of the will but for the concluding sentence of item 12. But what the testator had in mind there was not the changing of anything that had gone before; his only purpose was to confer upon his executor the power to sell and convey the land after the termination of the life estate. If the widow had died before her husband in the case at bar, undoubtedly the property at the testator's death would have passed to those who would have taken the property if he had died intestate. The will in express terms so provides. The fact that the widow survived the testator and renounced the will in no manner makes a substantial change in the condition of things; for when she had renounced the will she stood as to the estate just as she would have stood if she had died before the testator. To say that those who would have taken the property if the widow had died before the testator do not take it when she survived him and renounced the will, would be to follow form and not substance. For upon the whole will the objects of the testator's bounty subject to the provision of his wife and brother were those descendants of his brothers and sisters who would have taken the land if he had died intestate. To hold otherwise would be to say that the testator died intestate as to part of his estate and that upon the renunciation of the will by the widow, his heirs took the estate for her life. But his heirs are the persons who would take the estate if the testator had died intestate and are the persons who are intended as the beneficiaries of his bounty. To say that after the widow renounced the will their right to the land subject to her dower was not absolute, would be to defeat the testator's intention to provide for those who would take the estate if he had died intestate. While there are not a few cases holding that the renunciation of a will by the widow will not precipitate a contingent remainder, they recognize the rule that this will not be so held where to do so will

defeat the testator's intention apparent on the whole will, and we are of opinion that this case falls within the exception.

We, therefore, conclude that the circuit court erred in holding the title of Ed. C. O'Rear not good.

Judgment reversed and cause remanded for further proceedings consistent herewith.