### Jones, Executrix v. Jones' Executors.

(Decided April 27, 1923.)

## Appeal from Fayette Circuit Court.

1. Wills—Advancements not Considered in Disposing of the Estate, Except to Extent Expressed in Will.—Under the common law rule that the doctrine of advancements applied only to intestate estates as modified by Ky. Stats., section 1407, providing that advancements shall be taken into consideration in the distribution of that portion of the estate not disposed of by will, the question of advancements does not enter into the disposition of the estate, where the will disposed of the testator's entire property, except to the extent that the testator made provision therefor in the language he employed in making his will.

2. Wills—Ascertained Intention from Language Used Controls Subsidiary Rules for Construction.—The rule is universal that, in arriving at the intention of the testator, the courts should look to all the language which he employed, and, if in so doing his intention can be ascertained, that intention controls, regardless of collateral and subsidiary rules which may be employed in arriving at the intention when it is obscure.

3. Wills—Advancements Held Chargeable Only Against Share in Residue.—Where a will excluded from a trust fund property previously devised to testator's wife for life, with remainder to their children, and required the advancements made to the children to be charged as part of the estate and to be equalized out of the residue, with provision that any excess advancements over the

share of the child should be treated as a debt due the estate and collected with interest, the intention was plain to charge the advancements only against the share of a child in the residue, and not against a share in the remainder of the estate specifically devised.

4. Wills—To Change Estate Created by Original Will, Codicil Must Manifest Clear Intention to do so.—While a codicil may cut down, modify, or entirely destroy an estate created by the original will, it must manifest a clear intention to do so, in order to have that effect, since it is nothing but a subsequent or added clause to the will, and a prior created estate will not be qualified by a subsequent clause, except by clear language indicating such purpose.

5. Wills—Codicil Held not to Charge Advancements Against Specific Devise.—Where the will provided that advancements to children should be charged only against their share of the residue, and not against their remainders in property specifically devised, a codicil expressly adopting the will which directed that a son should be charged with interest on two items of advancements and should take nothing from the estate unless his share exceeded the advancements mentioned in the will and codicil, did not require the advancements to be charged against that son's share in the property specifically devised.

6. Wills—Construction to Equalize Distribution Must Yield to Manifest Intention.—The rule that wills should be so construed as to equalize the property among those standing in the same relation to testator is never invoked where the language of the testator is otherwise plain, since he has a right by his will to dispose of his property without considering the equality of distribution.

ALLEN & DUNCAN and J. P. JOHNSTON for appellant.

GEO. C. WEBB and JAS. G. DENNY for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The sole question involved in this appeal is the correct construction of the will of Thomas Jones and the codicil attached thereto. The testator died in 1893 a resident of Fayette county, and his will with the added codicil was duly probated in the county court of that county. Eleven years afterwards his executors made a final settlement of the portion of the estate devised and bequeathed to them for distribution, as directed therein, and which they seem to have regarded as all of the estate over which they were given jurisdiction, which settlement was made in a suit brought for the purpose in the Fayette circuit court, and in the judgment rendered therein they were discharged.

The will was divided into items, and in the second one the testator said: ''I also devise and bequeath to her (his wife) for life, *with remainder in fee to my children* as hereinafter set out,'' a certain lot in the city of Lexington containing two acres and upon which there were erected two dwellings, and outbuildings, and he directed that his wife, during her life, should be entitled to all the rents, issues and profits arising from that property. Subsequent items bequeathed specific sums to named devisees and in which it was stated, ''which sums are not to be accounted in the distribution of my estate in taking advancements into account.'' In item V it was provided that ''all the remainder of my estate, real, personal and mixed, and whereon the same may be located, I give, devise, and bequeath unto my executors hereinafter named in trust *for the uses and purposes hereinafter expressed, namely.*'' By the third clause of that item the executors were directed to pay debts and funeral expenses ''and put all my real estate in good repair, especially that devised to my wife for life under item II of this will.'' The fourth clause of item V says: ''They (executors) will take charge and oversight of all my real estate, *that devised to my wife alone excepted,* and after putting the same in good repair sell or rent out the same, keep the same in good repair, pay the taxes thereon, keep the dwellings and buildings thereon insured for the benefit of my estate and so continue until they shall think best to sell the same or any part or parcel thereof; I require them, however, to carry out the trust hereby reposed and to make a complete settlement of my estate *on or before the time my daughter Carrie arrives at full age.* The real estate so devised to them in trust is thus described: About 390 acres of land on Tate's creek pike about eight miles from Lexington; also about 300 acres of land on Jack's creek turnpike; 100 acres of land on Tate's creek pike known as Hunter's farm, and about ten miles from Lexington; also a few acres of land on Tate's creek pike about four miles from Lexington, being what remains unsold of the tract known as the Wilson land; and about nine acres of land known as Wyatt place on same pike about eight miles from Lexington, Ky. . . . After my executors have carried out the foregoing provisions, paid my debts, set apart the property devised to my wife, paid the special legacies and the expense of winding up of my estate I direct them, having due regard to the advancements made my children, hereinafter set out, to divide all

the rest and remainder of my estate into eleven (11) equal parts, and I hereby devise one of said parts each to my ten living children, and one part jointly to the three children of America Denton, my deceased daughter, or to their survivor or survivors. Should any of my children die before me unmarried and childless the part so devised to them shall revert to my estate, and be distributed equally among my surviving children and grandchildren; the latter class to take the part their parent would have taken; and should any of my said children die before me leaving lawful issue of their body, then such issue to take the part the parent would have taken.''

Item VI set forth the advancements made by the testator to some or all of his children, in which it appears that his son, W. T. Jones, had received considerably more than any of the other children, and after enumerating the advancements made to him and directing that interest be charged thereon (which, when not otherwise provided, would be calculated from the testator's death), it is provided: ''And if these three several sums amount to more than his distributive share of my estate then I will that the excess *be treated as a debt due my estate,* to bear interest from and after the date of the probate of my will, and require him to pay said excess and interest.'' At the close of the enumeration of the advancements the will says: ''The foregoing advancements are to be estimated as a part of my estate, *and out of the residuum thereof,* hereinbefore *devised to my executors in trust,* I will that my children are all to be equalized upon the final distribution of my estate, giving one-eleventh to each of my children who may survive me, and one-eleventh to the children of each of such as may be dead.''

The will was written on February 9, 1893, but was not executed before witnesses till May 27 following, and on the latter date a codicil was executed in which the testator directed that his son, W. T. Jones, should be charged with interest on two items constituting the advancements made to him amounting to $3,303.64, from February 5, 1887, on one of them, and from February 12 the same year on the other, and said therein ''that he (W. T. Jones) shall take nothing from my estate unless his distributive share shall exceed the advancements charged to him in item VI of this my will, & the amount of said two claims with interest.'' In that codicil he referred to his will and stated that he republished and confirmed ''all & singular the foregoing provisions of my will, except that I modify the

same in this," followed by the above changes. The foregoing provisions of the will and codicil are all having any bearing upon the question involved, and which question appears later on in this opinion.

Emily C. Jones, testator's widow, took possession and full control of the two acres of ground devised to her for life, and occupied and controlled it till her death on July 5, 1918, a period of twenty-five years after the death of her husband. W. T. Jones died in 1900 leaving a will in which he made his wife, the appellant, Virginia Jones, his sole devisee. In the distribution made by the executors in the equity action hereinbefore referred to, the portion of the residuum of the estate devised to the executors to be converted into cash not later than the arrival at age of testator's youngest daughter, Carrie Jones, including the advancements made to all the children, as directed in clause VI of the will, was divided into eleven parts, but the advancements made to W. T. Jones with interest thereon amounted to more than one-eleventh thereof and his widow as his sole devisee obtained nothing in that distribution. On the contrary, the excess of the advancements over and above his share in that distribution, according to the calculations then made, was something near two thousand dollars.

This action was brought by the executors and the surviving children and some grandchildren of the testator against some of the others, including appellant as executrix and widow of W. T. Jones, and her children, seeking to sell the two-acre lot in Lexington for distribution among those entitled to the proceeds and for settlement of the estate of the testator. It was alleged in the petition that appellant, as the successor of her husband's interest in the testator's estate, was not entitled to any of the proceeds of that lot until the balance of the unpaid advancement made to her husband was paid. The land was sold and one-eleventh of the proceeds, after the payment of cost, did not amount to that balance with accumulated interest. Before any judgment of distribution appellant filed her answer in which she denied the contention of plaintiffs and alleged that it was the intention of the testator, her father-in-law, to charge the advancements mentioned in his will against only that portion of his estate which he denominated in his will as the "residuum" and which he devised to his executors in trust to be handled and disposed of as directed in the will, and that he did not intend for any portion of any of the ad-

vancements to be charged against the remainder interest of any of his children in and to the lot which he devised to his wife for life; and she insisted that if the advance-. ments made to her husband plus interest thereon exceeded his portion in such residuum so devised to his executors, then that excess as expressly directed by the will should "be treated as a debt due my estate," which her husband was expressly required by the will to pay to the executors with interest. She then pleaded limitation as against such excess and prayed that she be permitted to participate in the division of the net proceeds of the two-acre lot to the extent of one-eleventh thereof. The court sustained the demurrer filed to her answer. She declined to plead further, and since the excess of advancements made to her husband with interest thereon amounted to more than one-eleventh of the proceeds arising from the sale of the lot, a judgment of distribution was filed in which she was not allowed to participate, and complaining of the rulings of the court made and entered against her, she prosecutes this appeal.

There is no contention but that the testator died testate as to all of his property. At common law no accounting for advancements made by the testator during his life to any of his devisees could be demanded by the others in a settlement of his estate according to the terms of his will, since the doctrine of advancements applied only to intestate estates when distributing them under the particular statute or law regulating descent and distribution. And that was true at common law although there was a partial intestacy, as will be seen from the text in 1 R. C. L., page 657; but section 1407 of our statutes changed that rule and provided that advancements should be taken into consideration in the distribution of that portion of the estate not disposed of by the will in the same manner as in the distribution of undevised property of an intestate decedent under our statutes of descent and distribution. Therefore, when the ancestor, as in this case, left a will disposing of his entire property, the question of advancements does not enter into the disposition of his estate under the terms of his will, unless it makes provisions therefor, and then only in so far and to the extent that the testator so expressed in the language he employed in his will. Gully v. Lillard's Executor, 145 Ky. 746, and Brewer's Admr. v. Brewer, 181 Ky. 400, and other cases found in the note to the section of the statute, *supra*.

The question presented for determination is, there-
fore, one of the intention of the testator, Thomas Jones,
as expressed in his will.   If he intended that the remain-
der interest of his son, W. T. Jones, in the lot in Lexing-
ton should be charged with advancements made to him
the judgment was proper and should be affirmed, but if,
on the contrary, the language of his entire will clearly
indicates that he intended thereby to charge the advance-
ments only to the residuum or trust fund devised to his
executors, then the judgment was improper and should
be reversed.

The rule is universal that in arriving at the intention
of a testator the court should look to all the language
which he employed, and if in doing so his intention can
be ascertained, it is the duty of the court to administer
that intention regardless of other collateral and sub-
sidiary rules which may be looked to in arriving at the
intention when it is otherwise enveloped in more or less
obscurity.   In the will under consideration the testator
expressly directed his executors to repair the property
he devised to his wife for life, and directed them to take
charge and oversight of his real estate for the purpose of
carrying out the directions given them, but said ''that
devised to my wife alone excepted.''   By that expression
he excluded from the trust fund that property and by the
same act excluded the right of the executors to either
take charge of it or to exercise any control over it.   In
other words, they were to have nothing to do with it ex-
cept to put it in repair.

In item V of his will he provided that ''the foregoing
advancements are to be estimated as a part of my estate,
and out of the residuum thereof, hereinbefore devised to
my executors in trust,'' he provided that his children
should be equalized.   According to our interpretation of
that language the testator expressly charged the advance-
ments as a part of ''my (his) estate'' and out of the resi-
duum as thus composed the ones to whom the advance-
ments were made were to be equalized, and in the same
sentence he expressly stated what he meant, and what
property was covered by or included in the term ''resi-
duum,'' by saying ''hereinbefore devised to my executors
in trust.''   He had thereinbefore not only not devised to
them any property in trust, except that covered by the
residuary clause, but he expressly provided, as we have
seen, that the two-acre lot in Lexington should *not* con-
stitute any part of that trust.   Not only so, but he like-

wise provided that any excess of advancements made to his son, W. T. Jones, should be treated as a debt due his estate and to be collected with interest by his executors. In further substantiation of his intention and purpose to charge the advancements to the residuum of his estate only, he provided in his will that his executors should collect together all of the funds which he put into their hands for distribution and divide it, including the advancements, not later than the arrival at age of his youngest daughter, Carrie. She, of course, was then alive and the ultimate time for such distribution would possibly arrive before the death of her mother, and if it did so happen the remainder interest in the lot in question would necessarily be excluded from forming any part of the trust fund to be so distributed. Surely, in the light of all these provisions there can be but little, if any, doubt as to the testator's intention. Plainly he desired, and so expressed himself, to have an accounting and charging of the advancements as such at the time of the only distribution to be made by his executors and out of the funds in their hands for the purpose; but if the amount of that distribution was insufficient to extinguish the advancements made to his son, W. T. Jones, with interest, as provided, then the excess should be reduced to and become only a debt which it was the duty of the executors to collect the same as any other debt due the estate, and against which the statute of limitations ran from the time such excess became known. Clearly a judgment could have been obtained against W. T. Jones during his life or against his heirs or devisees after his death for the amount of such excess at any time and his remainder interest in the lot in question subjected to its payment; but like any other debt, if no effort was made to do so till after the claim was barred, then the statute of limitation would defeat a recovery thereon. The answer pleaded limitations, which the demurrer admitted, and the pleaded facts show that it had ripened.

But it is insisted that the codicil changed the effect of the language of the will even if it should be construed as we have above indicated. It is true that a codicil may cut down, modify or entirely destroy an estate created by the original will, but in order to have that effect the language of the codicil should manifest a clear intent to do so. Bedford v. Bedford's Admr., 99 Ky. 273, and 40 Cyc. 1415. In other words, a codicil is nothing but a subsequent or added clause to the will and a prior created

estate will not be modified or qualified by a subsequent one except by clear language indicating such a purpose. We, therefore, conclude that the codicil of the testator in this case, in which he expressly referred to and adopted his will, did not in any manner change or alter what he referred to in the latter as "my estate" out of which the advancements were to be paid and against which they were to be charged. Indeed such interpretation of the codicil is expressly recognized in brief for appellees, wherein they say: "We submit that there is no conflict between the provisions of the original will of Thomas Jones as to providing for an equal distribution among his children, and the provisions of the codicil in this respect;" and further on it is stated in brief: "But, as we have pointed out, there is no conflict between the codicil and the will except that the codicil requires interest to be charged on the advancements" from and after the time they were made.

It is difficult sometimes to find adjudicated cases supporting our conclusions in every particular in the construction of wills, because the facts of no two cases are alike; but the question to be determined (the intention of the testator) must always be arrived at from a consideration of the particular language of the particular will under consideration. The polar star which should always guide the courts in arriving at the correct interpretation is the ascertained intention of the testator to be gathered from the language he employed, and that rule, as often expressed by this and other courts, surrenders to no other if the language is clear and unambiguous. One of the latest cases from this court so holding is that of Gatto v. Gatto, 198 Ky. 569.

In opposition to the above conclusions it is strongly urged that wills should be so construed as to equalize the property between or among those standing in the same relation to the testator. But, it must not be forgotten that it is never invoked where the language of the testator is otherwise plain, since he has the right by his will to dispose of his property as he sees proper, entirely eliminating therefrom the consideration of equality. As we interpret the provisions of the will involved we do not arrive at the point where it becomes necessary to invoke the rule contended for, since as we construe it the testator intended for the advancements mentioned in his will to be charged against the trust fund devised to his executors and to none other; and that if it was insufficient to liqui-

date the advancements, the excess would be reduced to the level of a simple debt due to the estate and to be treated as such.

Entertaining these opinions, it results that the court erred in sustaining the demurrer to appellees' answer and the judgment is reversed with directions to set it aside and overrule the demurrer, and for subsequent proceedings consistent with this opinion.