## Bourne v. Johns.

(Decided March 18, 1930.)

JOHN C. WATTS for appellant.

ROBERT J. DENNY for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Reversing.

Paul Bourne sold to R. Lee Johns a tract of land and tendered him a deed executed by him and his sister Lena Edwards. Johns declined to accept the deed on the ground that the grantors had not title. This suit followed. The facts are these:

Paul Bourne and Lena Edwards are the only children of William Bourne, who died testate in the year 1914 and by his will devised a part of the land in controversy to Lena Edwards for life with the remainder at her death to her children. William Bourne held the land under the will of his father, Isaac Bourne, who died in 1881, leaving a will which was duly admitted to probate, and, omitting the formal parts, is in these words:

"I will and bequeath to my daughter, Josie, wife of J. M. Dunlap, the home tract of land on which I now reside, containing one hundred (100) acres, and also the thirty-seven (37) acres tract,

known as the Lerocus field, to have and to hold during her natural life, and at her death to go to her children.

"I will that the balance of my real estate be equally divided between my son William and my daughter Lillie, wife of Joseph Wallace, to have and to hold during their lifetime and if they should have no children at their death the land is to return to the children of my daughter Josie or their heirs.

"I do hereby require that my brother John M. Bourne shall have a home as long as he lives and I make it the joint duty of my three children to see that he is cared for as they know I would provide and care for him. I also require that my sister Lucy shall be cared for in the same manner by them.

"At my death whatever cash and chattel property I may be possessed of I will they shall be equally divided between my three children."

The question presented is: Did William and Lillie, under this will, take only a life estate with remainder at their death to their children, or did they, under the will, take a fee? The circuit court held that they took a fee. Paul Bourne appeals.

The court is unable to distinquish this case from Froman v. Froman, 175 Ky. 536, 194 S. W. 809, 810, where the devise to the daughter there in controversy, was in these words: "Rhoda D. Froman what may be coming to her I will it to be in real estate to have her lifetime for her benefit if she has no heir of her own issue at her death to come back to my bodily heirs."

Holding that Rhoda Froman took only a life estate under the will and that her children took the fee in remainder at her death, the court said: "In our opinion the intention of the testator, gathered from the language of the clause in question and the will as a whole, was to give Mrs. Froman only a life estate in the interest devised her in the land with remainder in fee to her child or children living at the time of her death; but that if she left no child or children surviving her, that is, living at the time of her death, then and in that event such interest should go to and the fee vest in the other devisees named in the will, Mrs. Froman's brothers and sisters, children of the testator. The will provides for no contingency, the happening of which would vest the title absolutely in Mrs. Froman. The only contingency

provided for is one that cannot arise or happen during her life. It is not that the birth of a child or children, which could, of course, only take place while she is living, would have the effect to convert her title from a life estate to a fee. The contingency provided for can have no effect upon her; whether she did or did not have children only affects the disposition the will requires to be made of the interest in the land after Mrs. Froman's death. If survived by children, they, as remaindermen, take in fee the interest in the land in which the mother was devised a life estate. On the other hand, if the latter leave no child or children surviving her, the interest in the land must, under the will, go to her brothers and sisters, heirs at law of the testator.''

This case is really stronger for the view there expressed than the will in that case. Here the testator had three children. Josie had children living. William and Lillie had no children. The testator is careful in each case in the devise to his children to limit it during their lifetime, or during her natural life. It is plain that he intended his children to have only a life estate. It is also plain from the will that he intended to provide for his grandchildren at the death of their parents. Plainly on the face of the will he did not contemplate that one of his children would have a greater estate under the will if they died with children than if they died leaving no children surviving them. After devising one tract of land to his daughter Josie, the testator says, "I will that the balance of my real estate be equally divided between my son William and my daughter Lillie." He thus clearly shows an intention to dispose of his entire real estate, and that he did not contemplate dying intestate as to any part of his property is shown by the last clause of the will, by which the cash and personal property owned at his death are equally divided between his three children. To hold that this man died intestate as to any part of his property would be to fail to carry out the plain meaning and intent of his will. There would be no dispute about it if after the words "their lifetime" he had written "and at their death to go to their children" before the words "and if they should have no children," etc., but what is necessarily implied need not be expressed. Warfield v. Gardner, 79 Ky. 583. The failure to insert these words was only an accidental omission of the writer.

Plainly William and Lillie each only took a life estate. If they died leaving children, the children of Josie took no interest. The testator plainly intended to put all three of his children on an equal footing and to put their children on an equal footing. The rule is well settled that in such cases the court will read the whole will, and the intention of the testator will be carried out as shown by the whole will. The testator will be presumed to have intended to dispose of all his property and to die intestate as to none of it, unless the will indicates the contrary. Where the language of a will is susceptible of two constructions, that construction is favored which will place upon equality those devisees who are equally the natural objects of the testator's bounty. Young v. Shaver, 186 Ky. 608, 217 S. W. 902; Westerman v. Rastetter, 206 Ky. 295, 267 S. W. 180; Penick v. Lewis, 194 Ky. 231, 238 S. W. 745.

"Under ordinary circumstances a man makes a will to dispose of his estate, or at least, of his estate as it exists at the time he makes his will. If, therefore, a will is susceptible of two constructions, by one of which testator disposes of the whole of his estate, and by the other of which he disposes of a part of his estate only, and dies intestate as to the remainder, the court will prefer the construction by which the whole of testator's estate is disposed of, if this construction is reasonable, and consistent with the general scope and provisions of the will." 186 Ky. 608, 217 S. W. 902, 904.

This is not the case of a devise to A, and, if he died childless, to the children of B. Here the estate of each of his children is expressly limited by the testator to a life estate. To hold that these devisees took a life estate under the will and then took the remainder as his heirs at law, if they died leaving children surviving them, would defeat the plain intention of the testator clearly expressed in his will to restrict his children to a life estate in the land. The purpose of all rules of construction is to ascertain and carry out the intention of the testator expressed in the will. His intention as shown by the will is the pole star, and no construction can be adopted which would defeat and destroy it.

Judgment reversed, and cause remanded for a judgment as above indicated.