## Breckinridge et al. v. Breckinridge's Ex'rs et al.

(Decided May 5, 1936.)

WILLIAM B. GESS for appellant Henry Breckinridge.

ALLEN, DUNCAN & DUNCAN for other appellants.

WILLIAM WALLACE for appellee Thomas R. Underwood.

WILSON & HARBISON for other appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming in part and Reversing in part.

This suit was brought by the executors of Desha Breckinridge, who died a resident of Fayette county, Ky., February 18, 1935, to obtain the construction of his will. The doubt as to the proper interpretation of the will arose by reason of certain provisions of the codicil, which was executed November 6, 1934. The original will was dated April 14, 1934.

In paragraph 1 of the will the testator disposed of certain personal effects. In paragraph 2 he gave all other property owned by him to trustees named in a subsequent paragraph of the will. In paragraph 3 he authorized the trustees to manage and control the trust property, invest and reinvest same. Paragraphs 4, 5, 6, and 7 read as follows:

"IV. One-half (½) of said net income shall be paid to my beloved wife, Mary F. Breckinridge, for the term of her life, with remainder upon her death to my sister, Sophonisba P. Breckinridge, if she be then living, for her life, and ultimate remainder to my cousin Henry Breckinridge; but if my said sister be not then alive, this remainder upon my wife's death shall go direct to my said cousin. And at the termination of this trust, as hereinafter provided for, the one-half (½) of the corpus represented by this one-half of net income shall pass, and be turned over by my Trustees, to my said cousin if he be then living, otherwise to or amongst such person or persons as he may have appointed by will, or, in default of such appointment, to his heirs.

"V. One-third (1-3) of said net income shall be paid to my sister Sophonisba P. Breckinridge for the term of her life, with remainder, both as to income and as to corpus in like manner as above, upon her death, to or amongst such person or persons, or to or for the benefit of such purposes, projects or objects, as she may by will appoint, or, in default of appointment by her, then to the three children of my brother, Robert J. Breckin-

ridge, if surviving, and the issue of any of them that may be dead, as hereinafter limited in Clause X of this will: provided, however, that if it should at any time, or from time to time, be necessary, for the comfort or well-being of my sister Sophonisba, to use any part of the corpus of the one-third of the trust property held for her benefit, then I authorize and direct my Trustees to pay to her or for her benefit, out of such corpus, whatever amount may be necessary or proper for such purpose: and the written receipt of my said sister for any and all amounts so paid or expended shall be a full acquittance to my Trustees.

"VI. One-twelfth (1-12) of said net income shall be paid my sister Eleanor B. Chalkley for the term of her life, with remainder, both as to the income and as to the corpus in the same manner as above, upon her death, to or amongst such person or persons as she may by will appoint, or in default of appointment by her, then to her heirs.

"VII. To Thomas R. Underwood, long and faithfully employed in the publication of the Lexington Herald, I give the remaining one-twelfth (1-12) of said net income and direct that same be paid over to him, or his heirs or testamentary appointees, during the continuance of the trust: and on the termination of the trust one-twelfth (1-12) of the corpus of the trust property shall pass, and be turned over by my Trustees, to said Thomas R. Underwood absolutely, or, if he be then dead, to such person or persons as he may by will appoint, or in default of such appointment, then to his heirs."

There were a number of other paragraphs not necessary now to mention, except that in paragraph 14 he appointed his wife, Mary F. Breckinridge, and William C. McDowell and Thomas R. Underwood, all of Fayette county, Ky., and his sister, Sophonisba P. Breckinridge, of Chicago, Ill., and his cousin, Henry Breckinridge, of New York City, to be the trustees of the trust estate created by the will; and in paragraph 15 he appointed his wife, Mary F. Breckinridge, and William C. McDowell and Thomas R. Underwood to

be the executors of his will. The codicil reads as follows:

"I, Desha Breckinridge, make this codicil to my will of April 13, 1934.

"I want my beloved wife, Mary F. Breckinridge, to make distribution of the articles of special family interest to those to whom I have designated them at such time as she desires. The portrait of Thomas Jefferson is to remain in her possession for her lifetime and at her death is to go to my cousin, Henry Breckinridge.

"Paragraph IV. One-half ($\frac{1}{2}$) of the net income from my estate shall be paid to my beloved wife, Mary F. Breckinridge, for the term of her life, with remainder upon her death to my sister, Sophonisba P. Breckinridge, if she be then living, for her life, and the ultimate remainder to her estate to be divided amongst such persons as she may appoint by will.

"Paragraph V. Three-twelfths of the net income from my estate shall be paid to my sister Sophonisba P. Breckinridge for the term of her life, with remainder, both as to income and as to corpus in like manner as above, upon her death to or amongst such person or persons or to or for the benefit of such purposes, projects or objects, as she may by will appoint.

"Paragraph VI. I leave to my sister Eleanor Breckinridge Chalkley $1,000 to be paid to her at such time as considered wise by my Trustees.

"Paragraph VII. I leave to my friend, Thomas R. Underwood, 1-12 of the said net income from my estate and direct that same be paid over to him by my Trustees.

"I leave to my cousin, Henry Breckinridge, Fifteen Thousand ($15,000.00) Dollars and direct that it be paid to him at such time as considered wise by my Trustees under this will.

"I appoint my wife, Mary F. Breckinridge, William C. McDowell and Thomas R. Underwood, all of Fayette County, Kentucky, and my sister

Sophonisba P. Breckinridge, of Chicago, Illinois, to be the Trustees hereunder.

"In witness whereof I have hereunto set my hand this 6 day of November, 1934.

"Desha Breckinridge"

The executors sought the advice and instruction of the court as to the testator's intent in several particulars, and especially as to the extent to which the provisions of paragraphs 4, 5, 6, and 7 of the will were changed, or modified, by the codicil, and whether the gifts to Henry Breckinridge, Eleanor Breckinridge Chalkley, and Thomas R. Underwood in the codicil were in addition to the bequests made to them in the will, or in substitution therefor. The testator's widow, Mary F. Breckinridge, on April 22, 1935, renounced the will and relinquished the provisions made for her and elected to take instead the share of his estate provided for her by statute. The circuit court adjudged that, by reason of the widow's renunciation of the will, all gifts made in remainder, expectant upon a prior interest or estate in the widow, were accelerated and vested in possession in the next taker, just as if the widow's life interests had been terminated by her death. The judgment of the chancellor continues:

"2. By numbering the 3rd, 4th, 5th and 6th grammatical paragraphs of his codicil 'Paragraph IV,' 'Paragraph V,' 'Paragraph VI,' and 'Paragraph VII,' respectively, the testator intended those four paragraphs of his codicil to refer to, respectively, and to be construed together with, Paragraphs IV, V, VI and VII, respectively, of his will, as so designated.

"3. In accordance with the intention of the testator as expressed in Paragraph IV of his will, as modified in the corresponding paragraph of his codicil, and as affected by the acceleration wrought by the widow's reunuciation, one-half or six-twelfths (6-12), of the net income from the property given in trust, hereinafter to be called the 'trust estate', passes to the defendant, Sophonisba P. Breckinridge, for her lifetime, with power,— if she die before the termination of the trust.—to appoint by will the remainder in said six-twelfths

(6-12) of net income for the balance of the term of the trust; and at the termination of the trust the six-twelfths (6-12) of the corpus of the trust estate corresponding to said six-twelfths of net income goes to the defendant, Henry Breckinridge, absolutely and in fee simple, if he be then living, otherwise to whomever he may have appointed by his will, or, in default of such appointment, to his heirs.

"4. In accordance with the intention of the testator as expressed in Paragraph V of his will, as modified in the corresponding paragraph of his codicil, one-fourth or three-twelfths (3-12), of the net income from the trust estate passes to the defendant, Sophonisba P. Breckinridge, for her lifetime, with power to appoint by her will both (1) the remainder in said three-twelfths of net income for the balance of the term of the trust,—if she die before the termination of the trust,—and also (2) the corresponding three-twelfths (3-12) of the corpus of the trust estate; and in default of such appointment, said interests pass to the children of the testator's brother Robert J. Breckinridge, namely, the infant defendants Nisba Desha Breckinridge, Clair E. Breckinridge and Robert J. Breckinridge, Jr., under the terms and conditions set forth in paragraph V of the will.

"5. In accordance with the intention of the testator as expressed in Paragraph VI of his will, as modified in the corresponding paragraph of his codicil, one-twelfth (1-12) of the net income from the trust estate passes to the defendant Eleanor B. Chalkley for her lifetime, with power to appoint by her will both (1) the remainder in said one-twelfth of income for the balance of the term of the trust,—if she die before the termination of the trust—, and also (2) the corresponding one-twelfth of the corpus of the trust estate; and in default of such appointment, said interests pass to her heirs. And, in addition to the above, the defendant Eleanor Chalkley is given the sum of One Thousand Dollars ($1,000.00) 'to be paid to her at such time as considered wise' by the Trustees under the testator's will.

"6. In accordance with the intention of the testator as expressed in paragraph VII of his will, as modified in the corresponding paragraph of his codicil, one-sixth, or two-twelfths (2-12), of the net income from the trust estate passes to the defendant, Thomas R. Underwood, for his lifetime: and on the termination of the trust, the corresponding two-twelfths of the corpus of the trust property shall pass to him absolutely, or, if he then be dead, to whomsoever he may have appointed by his will, or, in default of such appointment, then to his heirs.

"7. In accordance with the intention of the testator as expressed in the seventh grammatical paragraph of his codicil (which is an unnumbered paragraph) the defendant, Henry Breckinridge, is further given the sum of Fifteen Thousand Dollars ($15,000.00), to be 'paid to him at such time as considered wise' by the Trustees under the testator's will.

"8. The above-mentioned gifts of One Thousand Dollars ($1,000.00) to the defendant, Eleanor B. Chalkley, and Fifteen Thousand Dollars ($15,-000.00) to the defendant, Henry Breckinridge, having been directed by the testator to be paid to the two said beneficiaries, respectively, by the Trustees, 'at such time', in each case, 'as considered wise' by the Trustees, the said gifts, though they are specific pecuniary legacies, are not required to be paid to the beneficiaries by the Executors, but shall be paid by the Trustees when considered wise by them."

The chancellor properly adjudged that the renunciation of the will by the widow accelerated the estates of the remaindermen, which were dependent upon the life estate given to her by the will. It is a well-established rule that the remainder is precipitated by the renunciation of the will by the spouse, who is given a life estate, and that it takes effect immediately as of the date of such renunciation. Postponement of enjoyment of the remainder is only for the purpose of letting in the particular estate, and upon the elimination of that estate in any manner at all the remainder vests

in possession. Brooks v. Stuart, 238 Ky. 235, 37 S. W. (2d) 56; Keeton v. Tipton, 184 Ky. 704, 212 S. W. 909; O'Rear v. Bogie, 157 Ky. 666, 163 S. W. 1107; Trustees Church Home v. Morris, 99 Ky. 317, 36 S. W. 2; Peynado's Devisees v. Peynado's Ex'r, 82 Ky. 5; Wood's Adm'r v. Wood's Devisees, 1 Metc. 512; Sherman v. Flack, 283 Ill. 457, 119 N. E. 293, 5 A. L. R. 456; 23 R. C. L. 557; 28 R. C. L. 333.

It is the contention of the appellant, Sophonisba P. Breckinridge, that paragraph 5 of the original will and paragraph 5 of the codicil are inconsistent, and that paragraph 5 of the codicil should be treated as substitutional for the same numbered paragraph in the original will. In using the numbers 4, 5, 6, and 7 in the codicil, the testator undoubtedly intended to refer to and modify the correspondingly numbered paragraphs of the original will. The question presented is: Does the codicil modify, change, or revoke certain provisions in these paragraphs of the will?

The familiar rule employed in construing wills that the intention of the testator will, if possible, be determined from the instrument as a whole, and the language employed by him will control, regardless of the technical and collateral rules of construction, unless the meaning of the will be ambiguous, doubtful, or obscure, must be kept in mind. It is also a well-settled rule in construing wills that a will and codicil must be read together as one instrument, and, so far as practicable, provisions apparently inconsistent must be harmonized so as to give effect to each. Poth's Adm'r v. Muse, 244 Ky. 433, 50 S. W. (2d) 967; Patterson's Ex'r v. Dean, 241 Ky. 671, 44 S. W. (2d) 565; Bowman v. Morgan, 236 Ky. 653, 33 S. W. (2d) 703; Lightfoot v. Beard, 230 Ky. 488, 20 S. W. (2d) 90; Guthrie v. Guthrie's Ex'r, 168 Ky. 805, 183 S. W. 221. And, while the codicil will prevail where there is an irreconcilable conflict between it and the will, yet this rule will not be applied so as to effect an alteration of the will, unless such an intention on the part of the testator is clearly and unequivocally expressed in the codicil. Courts will endeavor to give effect to every part of a will, and will construe it so as not to disturb the provisions of the original will further than is absolutely necessary to give effect to the codicil. Bowman v.

Morgan, supra: Jones, Ex'x, v. Jones' Ex'rs, 198 Ky. 756, 250 S. W. 92, 95; Norton v. Moren, 206 Ky. 415, 267 S. W. 171. It has also been held that a codicil is a republication and a ratification of so much of the prior will as it does not revoke. Lightfoot v. Beard, supra; Armstrong v. Armstrong, 14 B. Mon. 333.

Applying these rules to the will before us, the chancellor correctly adjudged that Sophonisba P. Breckinridge, under paragraph 5 of the will as modified by paragraph 5 of the codicil, takes one-fourth, or three-twelfths, of the net income from the trust estate for her lifetime, with power to appoint by will both (1) the remainder in said three-twelfths of the net income for the balance of the term of the trust, if she should die before the termination of the trust, and (2) a corresponding three-twelfths of the corpus of the trust estate, and in default of such appointment said interests to pass to the children of the testator's brother, Robert J. Breckinridge, named in the will. This construction gives effect to both the original will and the codicil. It was evidently the intention of the testator merely to reduce Sophonisba P. Breckinridge's share of the income from the trust estate during her lifetime from four-twelfths, as provided in paragraph 5 of the will, to three-twelfths, and to give the remaining one-twelfth to Thomas R. Underwood, which he did in paragraph 7 of the codicil. That this was the intention of the testator further appears from a consideration of paragraph 10 of the will, which is not referred to in the codicil. This paragraph of the will evinces a special interest on the part of the testator in the welfare of the three children of his brother, Robert J. Breckinridge. In it he provides in minute detail for the management of this part of the trust fund for the benefit of the three children of his brother, in the event his sister should die without making a testamentary appointment of the trust property which passed under paragraph 5 of the will.

What has been said applies with equal force in construing paragraph 4 of the will in connection with paragraph 4 of the codicil. By paragraph 4 of the original will, one-half of the net income derived from the trust estate was to be paid to the testator's widow during her life and then to his sister, Sophonisba P.

Breckinridge, if she be then living, during her life, and at her death to his cousin, Henry Breckinridge. At the termination of the trust, the one-half of the corpus, represented by this one-half of the income, was to pass to Henry Breckinridge, if then living, otherwise to such person or persons as he may have appointed by will, or, in default of such appointment, to his heirs. In paragraph 4 of the codicil the testator referred only to the net income from one-half of the trust estate, and only changed the disposition of the remainder of the income after the death of his sister. The codicil takes the income received from one-half of the trust estate, after the death of his sister and during the continuance of the trust, from Henry Breckinridge and gives it to Sophonisba P. Breckinridge's estate, to be divided amongst such persons as she may appoint by will. This is the only respect in which the codicil conflicts with the provisions of paragraph 4 of the will. The testator, in the codicil, failed to refer to the gift of the one-half of the corpus of the trust estate to Henry Breckinridge, and no language is used in the codicil indicating any intention on his part to revoke that provision of the will.

The chancellor also correctly adjudged that the gifts to Eleanor B. Chalkley and Thomas R. Underwood, in paragraphs 6 and 7 of the codicil, and the gift of $15,000 to Henry Breckinridge, in an unnumbered paragraph of the codicil, were in addition to, and not in substitution for, bequests made to the same legatees in paragraphs 4, 6, and 7 of the original will. In Jones, Ex'x, v. Jones' Ex'rs, supra, it was said:

"It is true that a codicil may cut down, modify, or entirely destroy an estate created by the original will, but in order to have that effect the language of the codicil should manifest a clear intent to do so. Bedford v. Bedford's Adm'r, 99 Ky. 273, 35 S. W. 926, 18 Ky. Law Rep. 193, and 40 Cyc. 1415. In other words, a codicil is nothing but a subsequent or added clause to the will and a prior created estate will not be modified or qualified by a subsequent one, except by clear language indicating such a purpose."

In Page on Wills, vol. 2, sec. 1383, the author says:

"If legacies are given by this instrument, as by will and a codicil, or by two or more different codicils, and there is nothing in the rest of the will to indicate that one gift is a repetition of the other, it will be assumed that such gifts are cumulative. This presumption exists even where the legacies are of the same amount."

There is nothing in the will before us which indicates that the testator intended to revoke the gifts theretofore made to the above-named legatees. If these gifts made in the codicil be treated as substitutional for the prior gifts, then intestacy would result as to part of the estate. Such a construction would violate the rule that the making of a will gives rise to the presumption that the testator did not intend to die intestate as to any part of his estate, unless the will indicates the contrary. Shaver v. Weddington, 247 Ky. 248, 56 S. W. (2d) 980; Bourne v. Johns, 233 Ky. 448, 26 S. W. (2d) 13; Corn v. Roach, 225 Ky. 725, 9 S. W. (2d) 1074; Thomas, Adm'r, v. Thomas, 220 Ky. 101, 294 S. W. 776; Walton Bank & Trust Co. v. Carpenter, 205 Ky. 629, 266 S. W. 358. The law favors a construction which disposes of the entire estate, and a construction of a carefully prepared will, such as the one before us, which involves intestacy as to a part of the estate should be avoided, if the will fairly construed will dispose of the whole estate. Hardin's Ex'r v. Hardin, 170 Ky. 736, 186 S. W. 893; Deppen's Trustee v. Deppen, 132 Ky. 755, 117 S. W. 352; Newcomb v. Fidelity Trust Co., 108 S. W. 911, 33 Ky. Law Rep. 41.

It is contended that the chancellor erred in holding that the pecuniary legacies to Eleanor B. Chalkley and Henry Breckinridge in paragraphs 6 and 7 of the codicil are payable at such time as considered wise by the trustees, since section 2065 of the Kentucky Statutes provides that if no time is fixed for the payment of a specific pecuniary legacy, it shall be payable one year after the testator's death. The statute has no application in the present case. It is intended to apply only to a personal representative, and to give him a reasonable time to administer the estate. Harlan's Trustee v. Harlan, 228 Ky. 73, 14 S. W. (2d) 397; Grainger's Ex'rs and Trustees v. Pennebaker, 247 Ky. 324, 56 S. W. (2d) 1007. Here the testator provided for the

payment of the legacies out of property turned over to the trustees by his executors, and it was competent for him to leave the time of payment to the discretion of the trustees. He, no doubt, had in mind the probable detriment to the trust estate if the executors should be required to raise $16,000 in cash to pay these legacies within the statutory period.

The chancellor adjudged that Thomas R. Underwood was entitled to one-twelfth of the corpus of the trust property at the termination of the trust, in addition to the one-twelfth of the trust estate given to him in paragraph 7 of the will, and one-twelfth of the net income from the trust estate given specifically to him in paragraph 7 of the codicil. This was erroneous. We find no language in the will or codicil authorizing such a construction. It was clearly the testator's intention in the codicil to take one-twelfth of the net income of the trust estate from his sister, Sophonisba P. Breckinridge, and give it to his friend, Thomas R. Underwood. He used the terms "net income" and "corpus" in the codicil and recognized the distinction between them. In paragraph 7 he wholly failed to refer to the corpus of one-twelfth of the trust estate in which he gave Thomas R. Underwood the income, and, under the rules heretofore stated, it cannot be said that he intended to alter the provisions of the will further than is clearly indicated by the language of the codicil. It was evidently his intention to give to Thomas R. Underwood, in addition to the gift already made to him in paragraph 7 of the will, one-twelfth of the net income from the trust estate until the termination of the trust. The one-twelfth of the corpus, represented by this one-twelfth of the net income, therefore passes under paragraph 5 of the will, that is, to or amongst such person or persons, or to or for the benefit of such purposes, projects, or objects, as Sophonisba P. Breckinridge may by will appoint, or, in default of appointment by her, then to the three children of Robert J. Breckinridge. Such a construction harmonizes all provisions of the will, and prevents intestacy as to any part of the estate.

In the respect indicated, the judgment is reversed, and in all other respects it is affirmed.

Whole court sitting.