CASE 95.—ACTION BY J. D. PORTER AND OTHERS AGAINST
MATTIE PORTER.—December 17, 1909.

## Porter v. Porter, &c.

Appeal from Butler Circuit Court.

JOHN M. GALLOWAY, Circuit Judge.

Judgment for plaintiffs, defendant appeals.—Reversed.

1. Deeds—Description of Property—Certainty.—A deed to a
tract of land "lying in Butler county, Ky., and described as
follows: Our entire interest in the S. A. T. Porter farm except
½ acre more or less on the north east corner of said farm
where J. D. Porter now lives," is not void for insufficiency of
description, there being evidence that S. A. T. Porter had
an interest in only one tract in that county and that
she had lived on that tract for many years after her husband's death, that the tract was known as the "S. A. T. Porter
land," and that J. D. Porter had purchased one-half acre of
that tract.

2. Executors and Administrators—Distribution of Estate—Sale
of Property—Relief.—Two brothers interested in equal parts
with other brothers and sisters in their father's estate deeded
their interest in the property to a third brother, and, after
the death of the third brother, induced his widow to return
the deeds to them; the deeds not having been recorded, the
consideration for one of them not having been paid, and the
consideration for the other being returned to the widow. Held,
that, in an action by another brother and sister for the sale
of the land and division of the proceeds, the two brothers
who deeded their interest should not have been relieved from
their contract of sale, the deeds by them being sufficient, but
that the court should have decreed that the consideration for
such deeds should be paid them out of the amount of the
proceeds which descended to the deceased brother who had
purchased their interest.

3.   Executors and Administrators—Distribution of Estate—Actions—Pleading.—In an action brought by one of the devisees for the sale of the land of the testator and division of the proceeds, the widow of one of the devisees who claimed the greater part of the property, and who had been in possession of the land for a number of years after the court decided that she and her children were not entitled to have their interests set apart and a homestead allowed them out of the same, because the real estate had been converted into personalty by the provisions of the will, filed an amended pleading, in which she alleged that she was the widow of one of the devisees named, alleged that he left surviving him five infant children who had resided with her, that her husband had left no property or provisions for her and the children, except two horses, one cow, one wagon, and some household goods not worth exceeding $200, and a part interest in a legacy, and asked that $730 be set aside out of the legacy to supply the deficiency in the property on hand at the death of her husband. Held, that a demurrer to the item of $730 was properly sustained, as it was impossible to determine the amount she was entitled to; the value of the household goods not being alleged.

4.   Conversion — Reconversion. — Testator directed in his will that, after all of his children had an equal outfit at the death of his wife, his land be sold and equally divided between all of his children. In another clause he gave his executor power, provided certain things happened, to sell the land and divide the proceeds between the children equally. Held that in the absence of an election by the devisees to treat the land as realty, the will converted it into personalty, and a reconversion of the devisees can only be affected by the joinder of all the devisees in such election, and such election is not shown by deeds conveying the interests of the devisees in the land or the proceeds thereof.

GARDNER & HOLMES for appellant.

GORE & BUNCH for appellees

OPINION OF THE COURT BY CHIEF JUSTICE NUNN— Reversing.

In the month of March, 1874, the will of J. D. Porter was duly probated in the Butler county court, and recorded in the clerk's office. He owned at his

death 400 or 500 acres of land which he had purchased from different persons, but all formed one body. He also owned some personal property. The will, beginning with the third clause, is as follows:

"3rd. I will after all my debts are paid that the remainder of my estate belong to my beloved wife and her children.

"4th. I will that my wife and children remain on the place until they marry or become of age.

"5th. I will that all of the children who are not of age be made equal in property with those who have married or may marry, that is I want them to have the same outfit.

"6th. I will that should my wife Sally die and there should not be a sufficient amount of perishable property on the place to make the youngest children equal in an outfit that they be made equal out of the proceeds of the land; an outfit is understood to mean horse, saddle and bridle, bed and clothing, cow and calf.

"7th. I will that after all my children have had an equal outfit at the death of my wife Sally that my land be sold & divided equally between all my children.

"8th. I will that my wife Sally shall abide at my old residence or on a place that shall be purchased by my executor out of the proceeds of the old residence, should she live to become disabled from age or affliction that she shall be provided for out of my estate.

"9th. I will that my son William A. Porter be my executor and that he in the event of certain things that may come up in the division of the land on which I now reside that may render the place ill convenient and unprofitable that he shall have power to sell and

make a deed to the old residence and invest the money in land again which shall be the general property of all the children at the death of Sally my wife. Should my son William A. outlive my wife Sally he shall have power to sell my land and make a deed and divide the proceeds equally between my children that may be left after paying all expenses without security.''

The widow of J. D. Porter died in the early part of the year 1908. She remained a widow and resided on the land as requested by the will. J. D. Porter, the testator, had 11 children, some of whom died prior to his death and left children surviving them. The testator's estate, under the will, was to be divided into 11 equal parts. Sam Porter, a son, resided on the place with his mother and cared for her until his death in 1905, and his widow and children resided with and supported the old lady from that time until her death. Sam Porter, while residing on the farm with his mother, purchased the interests of several of his brothers and sisters, nieces, and nephews in the land or its proceeds, amounting in all to 23-33 of the whole. A part of the consideration for these interests, or, at least, some of them, was that Sam was to live with and support his mother during her lifetime, which, in our opinion, he complied with until his death, from which time his widow and children substantially carried out his contract in this respect.

This action was instituted in the month of Octo-, ber, 1908, by John D. Porter, a brother, and sister against the other heirs and interested parties for a sale of the land and a division of the proceeds among them. The main purpose of the suit, as stated in the petition was "to test the question whether the devisees owned an interest in the real estate or

in the proceeds thereof.'' The infant children of Sam Porter, deceased, and his second wife answered the children by guardian ad litem, and claimed that they owned 23-33 of the land, and asked that their interests be set apart in a body, and that the widow and infant children be allowed a homestead therein. They also alleged that two of the appellees, J. B. and J. E. Porter, had sold and conveyed to their father, Sam Porter, their interests in the property; that the consideration named in the conveyances from J. E. Porter was $40 cash in hand, and that Sam would take care of his mother the remainder of her life; that the consideration named in the deed from J. B. Porter to Sam was $60 which appears by the deed to have been cash in hand, but, in fact, was not, and Sam still owed it with its interest at his death. It is further alleged that after the death of Sam the deeds just referred to having never been recorded, J. B. and J. E. Porter went to Sam's widow and wrongfully induced and persuaded her to surrender the deeds to them. J. E. Porter returned the $40 which he had been paid by Sam to his widow, and J. B. Porter surrendered the papers he had showing that Sam owed him the $60. They alleged that this was a wrong perpetrated against their interests, and asked that J. B. and J. E. Porter be compelled to return these deeds to them; that they be recorded and that they be adjudged the owners of these two interests. The lower court sustained a demurrer to these pleadings upon the ground that by the terms of the will of J. D. Porter his real estate was converted into pensonalty, and that it must be sold and the proceeds divided among those in interest, and consequently the widow and children were not en-

titled to a homestead in the land. The court also adjudged that the deeds from J. B. and J. E. Porter were void for want of description, and conveyed no title or interest to Sam Porter in the property. The widow and children objected and excepted to this judgment.

The action of the court in declaring the deeds executed by J. E. and J. B. Porter void for want of description is the first question that arises on this appeal, and we will dispose of it now. As the descriptions in the deeds are in substance and effect the same we will copy but one, to wit: "Do bargain, sell and convey unto the said party of the second part, a certain tract or parcel of land lying in Butler county, Ky., and described as follows: Our entire interest in the S. A. T. Porter farm except 1-2 acre more or less on the north east corner of said farm where J. D. Porter now lives." In our opinion this description was sufficient. The testimony shows that S. A. T. Porter had no claim to or interest in any other land in that county; that she had resided on that farm for many years after her husband's death. The description given disposed of their interests in the S. A. T. Porter land in Butler county. The land referred to was known as the S. A. T. Porter land. The statement to the effect that it was the same land out of which one-half acre had been previously sold to J. D. Porter upon which he resided made certain the land described, as it was shown in the record that J. D. Porter had purchased one-half acre off of one end of the Porter survey upon which he erected a dwelling and resided for many years. The case of Hyden v. Perkins, 119 Ky., 188, 83 S. W., 128, 26 Ky. Law Rep., 1099, and the authorities therein cited, settle the question. The court should not have re-

lieved J. E. and J. B. Porter from their contract of sale of the property; but J. E. Porter should have the $40 and its interest returned to him by Mrs. Sam Porter to whom he paid it when he got his deed from her, and J. B. Porter should be allowed the purchase money due him for his interest to-wit, $60, with its interest, which should be paid him out of the proceeds of the sale of Sam Porter's 23-33. When the court determined that Sam's widow and children were not entitled to have their interests set apart and a homestead allowed them out of same, because the real estate had been converted into personalty by the provisions of the will of J. D. Porter, the widow filed an amended pleading, in which she alleged that she was the widow of Sam Porter, gave the date of his death, and further alleged that he left surviving him five infant children who had at all times resided with the petitioner; that Sam left no property or provisions for her and the infant children, except two horses, one cow, one wagon, and some household goods not worth exceeding $200, and 23-33 interest in a legacy of J. D. Porter. She asked that $737 be set aside to her out of this legacy to supply the deficiency in the property on hand at Sam's death. She also alleged that she as Sam's widow was entitled to one-half of the surplus of the personalty, including the legacy, after the payment of Sam's debts. The court sustained a demurrer to this pleading and dismissed it, and this presents the only question that remains to be considered.

We are of the opinion that the court did not err in sustaining the demurrer as to the item of $737 claimed by reason of the deficiency in the articles of personal property, which is authorized to be set apart to widows and infant children by the statute.

The pleading is very defective. It was impossible for the court to determine any certain amount that she was entitled to. She stated that she received "two horses, one cow, one wagon, and some household goods not worth exceeding $200." She did not state what the household goods were. She only gave it as her opinion that they were not worth exceeding $200. The two horses and wagon were all that she was entitled to under this head, but she was entitled to another cow and calf or $20 in lieu of them. The household goods might have covered every article in that line allowed by the statute. It is our opinion, however, that the court erred with reference to her claim of interest in the proceeds of the sale of 23-33 of the land. By the will of J. D. Porter the real estate he owned was converted into personalty and the devisees took it as such. By the third and fourth clauses of the will he devised the farm to his wife and children until they married or became of age. The widow never married, but all the children became of age before her death. By the seventh clause of his will he provided as follows: "I will that after all of my children have had an equal outfit at the death of my wife, Sally, that my land be sold and divided equally between all my children."

In the ninth clause he gave his executor power, provided certain things happened, to sell the land and divide the proceeds among his children equally. After the death of their mother, the life tenant, the children instituted this action to have the land sold, and the proceeds divided as directed by the will.

The doctrine that land directed to be converted into money by a testator is to be regarded as a money legacy is well established, and has been long recognized by the courts of this state, subject, it is true,

to an election by the devisees whether to treat it as realty or personalty; but, in the absence of an election to regard it as realty, the law stamps it as a money bequest.  See Jarman on Wills, 756; Arnold's Exors. v. Arnold's Heirs, 11 B. Mon. 89; Williams on Executions, 767; Bowling's Heirs v. Dobyn's Admr., 5 Dana, 434; Field's Heirs v. Hallowell & Co., 12 B. Mon. 517; and Hocker, et al. v. Gentry, et al., 3 Metc. 473, and the authorities there cited.

The cases of Rawling's Exor., &c. v. Landes, &c., and Holeman, &c. v. Landes, &c., 2 Bush, 158, are conclusive of the question at issue.  It appears in those cases that Jacob Holeman devised to his wife for life 200 acres of land, and directed that at her death the land be sold by his executor and the proceeds divided among his children and two grandchildren.  Subsequent to Holeman's death his daughter, Mary, a devisee, married one Benjamin Rawlings, and died childless in the year 1845, and her husband survived her only about a year, when he died, leaving surviving him as his only child and residuary devisee appellant, John W. Rawlings, by a former marriage.  Mary's brothers and sisters sought to recover the interest in the proceeds devised to her in this 200 acres of land.  John W. Rawlings, a child of Benjamin by a former marriage, claimed it for the reason, as he claims, the will of Holeman had converted the land into personalty, and it was therefore given to Mary as a money legacy and upon her death her personal property passed, under the statutes, to her husband, and, when he died, it passed to Rawlings, his only son.  The court upheld Rawlings in his contention, and gave him the interest in the proceeds of the sale of the 200 acres of land which had been devised to Mary Rawlings.  In dis-

cussing the character of interest Mary took under this bequest, the court said: ''Was this an interest in realty or personalty? The doctrine that land directed to be converted into money by a testator is to be regarded as a money legacy and is now equally well established, and has long been recognized by the courts of this state in the cases before cited, as well as by numerous of the other American states and in England, subject, it is true, to an election by the devisees whether to treat it as realty or personalty; but, in the absence of an election to regard it as realty, the law stamps it as a money bequest.'' In view of the authorities, there is no escape from the conclusion that under the will of J. D. Porter his real estate was converted into personalty in so far as it affected his devisees, and they took money legacies rather than an interest in the realty. If Benjamine Rawlings, in the case just quoted from, took the interest of his wife after her death in the 200 acres of land devised to her by her father, Jacob Holeman, then appellant in the case at bar, Mrs. Sam Porter, took the interest provided for by statute in the interest or money legacy devised to her husband, Sam Porter, by his father in the will under consideration. It was provided in the statute as it existed in 1905, the date of Sam's death, that the wife should have one-half of the deceased husband's personal estate. Therefore appellant, Mrs. Sam Porter, is entitled to one-half of 23-33 of the proceeds of the sale of the real estate after the payment of Sam's liabilities and the expenses of the sale; but out of her portion she must refund to J. E. Porter the amount she received from him when she returned to him the deed or writing hereinbefore referred to.

Appellee's counsel admit the correctness of the rule above stated, but claim that there has been a reconversion by the devisees; that they elected to take the land, instead of the proceeds thereof. It is true that it is a well established rule that the devisees may elect to do so, but the facts do not support the contention of appellee's counsel *in this case. The authorities seem to consider it necessary, in order to create a reconversion of property, for all the devisees to join in the election, which was not done in this case. On the contrary, this action was brought to carry out the intention of the testator by selling the land and dividing the proceeds as directed by the will. It is true Sam received many deeds or writings from his brothers and sisters which had the effect to convey or transfer to him their interests in the land or the proceeds thereof, but this fact does not show an election to change the devise from one of personalty to one of realty. Some of the heirs did not convey their interest to any one, but held it under the will until their mother's death.

For these reasons, the judgment of the lower court is reversed and remanded for further proceedings consistent herewith.