## Ruh's Executors et al. v. Ruh et al.
(Decided Dec. 3, 1937.)

794

JOHN B. SHANNON and HUNT & BUSH for appellants.

WILSON & HARBISON for appellees.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

This appeal involves the propriety of the construction, decreed by the learned chancellor of the Fayette circuit court, of the will of Alfred Ruh in an action brought by his executors under the Declaratory Judgment Act (Civ. Code Prac., sec. 639a-1 et seq.), asking a construction of his will and advice as to the distribution of his estate.

In June, 1933, Alfred Ruh, of Fayette county, died leaving his wife, Rosa Ruh, a daughter, Florence Ruh

Wagner, and three sons, Elmer J. Ruh, Walter A. Ruh, and Alfred Ruh, Jr., surviving him. He also had surviving him a grandson (the child of his son, Elmer J. Ruh) named Alfred Joseph Ruh, an infant under 14 years of age who appears to have been the special object of his grandfather's affectionate concern, and to whom he bequeathed a large part of his estate.

Shortly after his death, the decedent's will was duly probated in the Fayette county court.

The will named the sons, Walter A. Ruh and Alfred Ruh, Jr., as executors, who thereupon qualified and entered upon the administration of the estate.

The provisions of the will, the lower court's construction of which we are asked to review as being erroneous, to the extent here urged, are as follows:

"I, Alfred Ruh, * * * do hereby make this my last will and testament.

"I. I direct the prompt payment of all my just debts and funeral expenses.

"II. If my grandson, Alfred Joseph Ruh, the son of Elmer J. Ruh and Ruth Ruh, be living at the time of my death, then I hereby give and bequeath to the Security Trust Company of Lexington, Kentucky, upon the following trusts and not otherwise, all the stocks, bonds, notes and *other securities* that may, at the time of my death, be in my safety box at the Security Trust·Company, in Lexington, Kentucky; said Security Trust Company as Trustee for my said grandson, Alfred Joseph Ruh, will take, hold and manage said stock, bonds, notes and other securities and if it deems it proper, sell and re-sell the same from time to time and re-invest the proceeds thereof in other stocks, bonds, notes or other interest bearing securities, as it may see fit, and collect the income therefrom until said Alfred Joseph Ruh shall reach the age of twenty-five years. After deducting the expense thereof said Security Trust Company as such Trustee will pay over the net income therefrom semi-annually to the Guardian of said Alfred Joseph Ruh for his maintenance and education until he shall reach the age of twenty-one years, and thereafter said Security Trust Company, as such Trustee, shall pay over the income therefrom to said Alfred Joseph Ruh in person, until he shall reach the age of twenty-five

years, at which time said Trust shall terminate, and said Security Trust Company as such Trustee will at that time turn over to said Alfred J. Ruh all the *stocks, bonds, notes and other securities* which shall be held by it for him. If, however, said Alfred Joseph Ruh shall die before he reach the age of twenty-five years, I direct that said Trust shall terminate at his death, and if he leaves issue living at the time of his death, then such issue shall take said notes, stocks, bonds, and other securities, and I hereby give and bequeath the same to such issue absolutely and in fee simple. But if said Alfred Joseph Ruh be dead at the time of my death, or if he shall die before he reaches the age of twenty-five years and leaves no issue surviving him, then I direct that said Trust fund shall be equally divided among my four children, Walter A. Ruh, Florence R. Wagner, Elmer J. Ruh and Alfred Ruh, Jr., and I hereby give and bequeath one-fourth thereof to each of said children if living, and if either of said four children be dead at the time and leave issue living, then such issue shall take the parent's share. If either of them be dead and leave no issue living at the time, then such deceased child's share shall pass to the surviving brothers and sisters.

"I have heretofore deposited with the Security Trust Company of Lexington, Kentucky, for said Alfred Joseph Ruh, a first mortgage 5% Gold Bond No. 758 of the Lexington Railway Company, for the sum of $1,000.00, under certain terms and conditions, and it is my intention to allow the same to stand just as provided in my agreement with said Security Trust Company, dated April 22, 1924, and said Security Trust Company is to manage said $1,000.00 fund as provided in said contract, separate and distinct from the trust fund provided in said will, and will carry out in full the provisions of said contract.

"III. All the *personal property* that I may own or have the right to dispose of at the time of my death, *except that hereinbefore referred to,* I hereby give, and bequeath absolutely to my wife Rosa Ruh to do with as she sees fit.

"IV. All the real estate that I may own or have the right to dispose of at the time of my death,

I hereby give and devise to my wife Rosa Ruh, for and during her natural life. *At her death, I hereby direct my executors hereinafter named, to sell all of said real estate and divide the net proceeds into five parts, and I hereby give, devise and bequeath one-fifth to my son,* Walter A. Ruh, one-fifth to my daughter, Florence R. Wagner, one-fifth to my son, Elmer J. Ruh, and one-fifth to my son, Alfred Ruh, *Jr. and one-fifth to my grandson, Alfred Joseph Ruh,* the son of said Elmer J. Ruh, and if either of them be dead at the time of my wife's death and leave issue surviving him or her, then such issue shall take the parent's share, but if either of them be dead, leaving no issue surviving him or her then I give, devise and bequeath such deceased child's share to whomsoever may be his or her heirs at law according to the statutes of distribution in force in Kentucky at the time of his or her death.

"V. I hereby nominate and appoint my sons, Walter A. Ruh and Alfred Ruh, Jr. Executors of this my last Will and Testament, and I hereby give to said Executors full power and authority to sell any or all of said real estate that they and my wife shall deem best, if sold during the lifetime of my said wife, and reinvest the proceeds thereof in other real estate, the title to be held in the same way as the property sold. If any sale be made during the lifetime of my wife, it shall only be done with her consent, evidenced by her joining in the deed. If either of said sons shall fail to qualify as Executor, or if either of them shall die, then the other shall have all the powers herein granted to both of them." (Italics ours).

In December, 1933, following the probate of the will, the deceased's widow, Rosa Ruh, filed her renunciation of the will, whereby she relinquished what was given her by it, electing to take, in lieu thereof, her dower and distributable share of her deceased husband's estate under the statute of descent, as if no will had been made.

In November, 1934, the executors of the estate, after selling the live stock and other tangible personalty and paying the testator's debts and funeral expenditures, brought this suit under the Declaratory Judgment Act against the widow and all other beneficiaries under the will, asking for a construction of the

will, and advice as to the distribution of the estate, for the reason that they had been unable to agree with the beneficiaries as to its proper distribution, due to (1) the widow's renunciation of the will; and (2) their uncertainty as to (a) whether certain life insurance policies found in the testator's box at the bank should be included in the gift of its contents to the grandson, made by the will, of "other securities," and (b) the effect of the widow's renunciation on the testamentary power given the executors to sell the real estate.

Upon the cause coming on to be heard before the Hon. King Swope, the regular judge of the court, upon the pleadings and exhibits therewith, the court handed down a very comprehensive and carefully prepared written opinion, and directed that, in accordance therewith, a judgment be entered, incorporating the opinion as a part thereof.

After a careful study and consideration of the whole record and of the contentions of both the appellants and cross-appellants, seeking modification or reversal of certain of the rulings pronounced by the judgment, we find and have concluded that the learned chancellor's strong and ably written opinion, showing his thorough analysis made of the case and the questions here again presented, fortified by liberal citation of authority supporting his conclusions, voiced in his judgment, furnishes a correct decision, exposition, and application of the law supporting his opinion and judgment pronounced on the questions here presented, and does itself fully dispose of and answer the criticisms made of his decree.

Being of such opinion, we are led to adopt the learned chancellor's opinion, in so far as we may, though to some extent abridged by reason of its extended length, as our own, thus affirming the judgment both upon the appeal and cross-appeal.

This opinion of the chancellor, pursuant to which his decree was made, and some of the provisions of which are here challenged, sets out first the provisions of the five paragraphs of the will, and then proceeds to set out the stocks, bonds, notes, and the three insurance policies (each for $1,000) left in the safety deposit box, of a total appraised value of $18,762.78, and also other personalty of the testator, consisting of cash left on deposit, $376.31, and the sale proceeds of live stock, farm

implements, etc., amounting to $1,571.61, making a total of $1,947.42, less $830.79, applied to the payment of testator's debts and funeral expenses, leaving as the total personalty on hand $1,117.13, which, added to the $18,-762.78, representing the appraised value of the contents of the safety deposit box, makes a total of $19,879.91 of personal property. Further, the opinion sets out that the testator left real estate consisting of three tracts of land, situated in Fayette county and aggregating 247 acres, of the total appraised value of $16,480, and, looking to the determination of what under the will is its proper distribution, it then proceeds as follows:

"The widow having elected to renounce the will, she thereupon becomes entitled to such share of her husband's estate as she would have been entitled to had he died intestate; and in ascertaining her share, his estate is to be regarded and treated as if he had died intestate. Her interest in the estate can neither be increased nor diminished by any of the provisions of the will. It must be ascertained and determined as if there were no will in existence. Her interest in her husband's estate is governed by section 1414 [1404], Kentucky Statutes, which allows her her 'dower and distributable share' of her husband's estate. The 'dower and distributable share' or 'dowable and distributable share,' as defined by section 2132 of our Statutes, is: (1) An estate for her life in one-third of her husband's realty; and (2) an absolute estate in one-half of her husband's 'surplus personalty.'

"The 'surplus personalty' above mentioned may properly be defined as all of the personalty remaining after the payment of all 'funeral expenses, charges of administration and debts.' See Kentucky Statutes, section 1403, and Towery v. Mc-Graw, 56 S. W. 727, 982, 22 Ky. Law Rep. 155.

"Bearing in mind the above statutory provisions, it will be seen that when the widow, Rosa Ruh, made her renunciation of the will of her late husband, she surrendered whatever rights she may have had under the third paragraph of the will to 'all the personal property' bequeathed to her, except the personalty theretofore given to the grandson, and to her rights under the fourth paragraph of the will to a life estate in 'all the real estate,'

and in lieu thereof is entitled under the law, and under the facts as disclosed by the record, to (1) an absolute estate in an undivided one-half of the testator's property which he left in the safety box at the Security Trust Company, plus (2) an absolute estate in an undivided one-half of the $1,117.13, being the balance of cash on hand after payment of all debts and funeral expenses (subject to other and further diminutions by cost of administration), and (3) an estate for life in one-third of the real estate, to wit, the three farms mentioned in the pleadings herein.

"When the widow takes one-half of the testator's personalty which he left in the safety box at the Security Trust Company, she does so at the expense of the grandson, to whom the testator attempted by his will to give 'all of the stocks, bonds, notes and other securities' left in the box. However, when she takes only one-half of the surplus personalty (shown by the pleadings to be $1,117.13) instead of taking all of it, as offered by the third paragraph of the will, she, on the other hand, leaves one-half of said surplus personalty.

"As to the real estate, it will also be noticed that by virtue of sections 1404 and 2132, Kentucky Statutes, the widow will only take a life estate in one-third of the testator's real estate instead of taking a life estate in all of the realty as offered by the fourth paragraph of the will. She, therefore, loses an estate for life in the other two-thirds of the realty by her election to renounce the will.

"Before the widow's one-half of the testator's surplus personalty can be determined, it will be necessary to first ascertain the items of which it is constituted. Regardless of whether such personalty is to be found in the safety box at the Security Trust Company or elsewhere, the widow is entitled to one-half thereof. So far as her rights are concerned, it is immaterial whether this personalty consists of 'securities' or not, just so long as it is personalty. It will be material, however, in determining the extent to which the legacy of the grandson, Alfred Joseph Ruh, has been depleted by the widow's election to take the widow's share under the statute, supra. That, however, will be referred to later on in this opinion. * * *

"Having determined the rights of the widow, we proceed next to the rights of the testator's own children and his grandchild, under the fourth paragraph of the will. As pointed out in Pittman v. Pittman, 81 Kan. 643, 107 P. 235, 27 L. R. A. (N. S.) 602, the election of the widow to take under the law does not render the will inoperative, except between herself and others claiming portions of the estate. As between the other devisees and legatees, it is the duty of the court to enforce the provisions of the will as nearly as possible in accordance with the intentions of testator. Timberlake v. Parish's Ex'r, 5 Dana (35 Ky.) 345. Under the fourth paragraph of his will, testator devises all of his estate to his widow for her lifetime, and directs that at her death the executors should sell the same and divide the proceeds thereof into five parts, giving one-fifth to each of his four children and one-fifth to his grandson. When a widow is given a life estate, with a remainder over, but renounces her husband's will, the remainders are accelerated; that is, they come into effect immediately upon the widow's renunciation, just the same as if the widow had died. 28 R. C. L. title 'Wills,' sec. 323, says: 'Ordinarily the election of the widow to take against the will has the effect of accelerating any remainders limited to take effect after a life estate is given to her. The election of a widow to take against her deceased husband's will is equivalent to her death as respects payment of legacies and the distribution of that part of the estate which is to be distributed under the will upon the happening of that event. The doctrine is one of interpretation, and proceeds on the supposition that though the ulterior devise is in terms not to take effect in possession until the decease of the prior devisee, yet, in point of fact, it is to be read as a limitation of a remainder, to take effect in every event which removes the prior estate out of the way.'

"In Woerner's American Law Administration, volume 1 (3d Ed.) sec. 119, page 407, the rule is succinctly stated as follows: 'Renunciation of a will by the widow to whom is given a life estate, and taking under the law instead, operates to accelerate the remainders expectant thereon.' See appropriate footnotes under same title.

"The Kentucky Court of Appeals in the case of Trustees Church Home v. Morris, 99 Ky. 317, 36 S. W. 2, 3, 18 Ky. Law Rep. 384, said: 'The only reason we conceive for the testator's postponement of the distribution until the death of his widow was that she might be provided for, and when that reason for postponement ceased, as it did upon her renunciation, we cannot see why those who were the chief objects of the testator's bounty should be delayed in the enjoyment of their legacy.' See, also, Wood's Adm'r v. Wood's Devisees, 1 Metc. (58 Ky.) 512; Cox v. Gaulbert's Trustee, 148 Ky. 407, 147 S. W. 25; O'Rear v. Bogie, 157 Ky. 666, 163 S. W. 1107; Keeton v. Tipton, 184 Ky. 704, 212 S. W. 909.

"The most recently adjudicated Kentucky case approving the rule of acceleration is Breckinridge v. Breckinridge's Ex'rs, 264 Ky. 82, 94 S. W. 2d 283.

"Under the above principle, the four children of testator and his grandchild, under section 4 of his will, come into immediate enjoyment of the proceeds of testator's realty, subject to the widow's life estate in one-third thereof, and by virtue of testator's direction in said will to sell the said realty on the death of his widow, and she having renounced the same, the said devisees are entitled to have the realty sold at once, as if she were dead, and to have the proceeds, after deducting the widow's statutory interest, divided among themselves. It might also be added in that connection that testator's direction to sell the said realty and divide the net proceeds among the five named beneficiaries amounts to an equitable conversion of the realty into personalty, because equity regards that which is ordered to be done as actually having been done. Page on Wills, volume 2, sec. 1177 et seq. The following cases from our own jurisdiction recognize that doctrine: Gedges v. Western Baptist Theological Institute, 13 B. Mon. (52 Ky.) 530; Duff's Ex'r v. Duff, 21 Ky. Law Rep. 1211, 54 S. W. 711; Cropper v. Gaar's Ex'r, 151 Ky. 376, 151 S. W. 913, 915, L. R. A. 1916B, 1139. The latter case quotes from Porter v. Porter, 135 Ky. 813, 123 S. W. 302, the following pertinent statement: 'The doctrine that land directed to be converted into money by a testator is to be regarded as a money

legacy is well established and has been long recognized by the courts of this state, subject it is true to an election by the devisees either to treat it as realty or personalty; but in the absence of an election to regard it as realty the law stamps it as a money bequest.'

"Of course, such a conversion of realty into personalty is not available to the widow who has renounced the will, for such widow does not take under the will, but against it. She takes only an estate for her life in one-third of the realty as her right under our statutory substitute for dower, and she cannot blow both hot and cold by renouncing the will and claiming one-half of his personalty, and at the same time rely on certain portions of his will which converts realty into personalty. Barnett's Adm'r v. Barnett's Adm'r, 1 Metc. (58 Ky.) 254; Cunningham's Estate, 137 Pa. 621, 20 A. 714, 21 Am. St. Rep. 901.

"The four children and one grandchild of testator are, as above pointed out, entitled to the immediate sale of the realty, and to the net proceeds of two-thirds of same.

"We proceed now to the rights of the grandson, Alfred Joseph Ruh, under the second paragraph of the will, whereby he is bequeathed all of testator's 'stocks, bonds, notes and other securities' in his safety box at the Security Trust Company in Lexington at the time of testator's death.

"It may be well at the outset to observe the nature and classes of legacies, which consist of specific, general and demonstrative. A specific legacy is said to be a bequest of a particular thing, or a specified part of testator's estate, which is so described as to be capable of identification from all others of the same kind. The testator must intend that the legatee have the very thing bequeathed, not merely a corresponding amount in value or like property.

" 'A specific devise, or specific gift, is a gift by will of a particular thing, or specified part of the testator's estate, which is capable of identification from all others of the same kind, and which may be satisfied only by the delivery of the particular thing.' 69 C. J. 921.

"A general legacy is one that may be satisfied out of the general assets of testator's estate, without regard to any particular fund, thing or things.

"'The legacy is one of quantity, either of money or other chattels, not in any way separated or distinguished from all others of like kind.' 69 C. J. 922.

"Now a demonstrative legacy partakes of the nature of both the specific and the general, and it is one of quantity; two elements being necessary: First, an unconditional gift, in the nature of a general legacy; and, two, indication of the fund out of which said legacy is payable. 69 C. J. 924.

"The character of the particular legacy depends upon the intention of a testator as gathered from the language of the will, construed as a whole, in the light, if necessary, of surrounding circumstances. Applying that rule, we see that the testator bequeathed all of his 'stocks, bonds, notes and other securities' in his safety box at the Security Trust Company, which definitely identified said securities as being in a particular place and container.

"'A legacy described by its location is usually specific. Where the contents of a safety box is specifically mentioned and merely described as being in the box, the legacy of the contents is specific.' 69 C. J. 933.

"The designation of a certain number or amount, or of certain securities as a part of the testator's estate, or as in a specific location, will provide the necessary identification to render the same a specific bequest. 69 C. J. 931. It is seen, therefore, that the legacy in the second paragraph of the will to the grandson is specific.

"The parties to this action are also unable to agree as to what personalty is included in the expression 'all the stocks, bonds, notes and other securities,' in the safety box at the Security Trust Company at testator's death. As pointed out earlier in this opinion, it is immaterial whether the safety box contained notes, stocks, bonds, securities, insurance to the estate, or what not, just so long as the same was the personal property of testator; the widow, having renounced the will, would

be entitled to one-half thereof. It is necessary though to determine just what items of personalty in the safety box are included in 'all stocks, bonds, notes and other securities,' in order to ascertain the extent, if any, to which the estate of the grandson has been depleted by the widow's election to renounce the will. There can be no doubt, in fact counsel all agree, that the grandson, in the absence of the widow's renunciation of the will, would under the second paragraph of the will have been entitled to the total amount of the contents of the box, appraised at $18,762.78, less the three insurance policies for the amount of $1,000 each, or $15,762.78.

"Counsel for all parties have conceded that the one Prudential Life Insurance Policy, No. 275773, in the sum of $1,000, naming Rosa Ruh as beneficiary, cannot be construed as coming within the phrase 'stocks, bonds, notes and other securities,' but is the sole property of Rosa Ruh, as the court has held, supra.

"It is the contention of counsel for guardian of Alfred Ruh, however, that the two Equitable Life Insurance policies, Nos. 1252038 and 1255401, in the sum of $1,000 each, were intended by the testator for the grandson, as coming within 'and other securities. * * *'

"It is quite true, as pointed out by counsel for the guardian, that the word 'securities' does include corporate stock. In Re Pierce's Estate, 177 Wis. 104, 188 N. W. 78. In Words and Phrases, First Series, under the title 'Security,' page 6386, will be found many definitions of the word 'securities.' On Page 6387 the text quotes from Thayer v. Wathen, 17 Tex. Civ. App. 382, 44 S. W. 906, as follows: 'The term "securities" in its broadest sense embraces bonds, certificates of stock, and other evidences of debt or of property.' See, also, Words and Phrases, Second Series, Title 'Security' page 499, in which it is said that the term 'security' embraces all evidences of debt. Other pertinent definitions of 'securities' may be found in 56 C. J. under the title of 'Securities,' pages 1278 and 1289, and footnotes thereon. * * *

"However, this court knows of no adjudicated case, and counsel has not cited any such case,

wherein an insurance policy payable to testator's estate has been construed as coming within the term, 'stocks, bonds, notes and other securities. * * *'

"On the other hand, we have a well-known maxim of construction known as ejusdem generis to aid in ascertaining the meaning of a statute or other written instrument; the doctrine being that where an enumeration of specific things is followed by some more general word or phrase, such general word or phrase is to be held to refer to things of the same kind. 19 C. J. P. 1255.

"It would seem, therefore, that even though a life insurance policy may be a security, under the rule of ejusdem generis, which in effect says that when a person uses the words 'stocks, bonds, and other securities,' it is presumed that he meant other securities of the same kind, life insurance policies not being of the same kind or class of securities as stocks, bonds, and notes; such life insurance policies would not be included in the legacy to the grandson, as all the testator gave to the grandson was the 'stocks, bonds, notes and other securities' of like character.

"There is one other rule of construction, which is the polar star rule in construing wills, and that is to ascertain the intention of testator and give it effect, *and to this end all rules of construction and presumption are made subordinate to the end of enforcing the testator's intentions,* which is to be gathered from his language used in the will from its inception to its close. Young v. Madison's Ex'r, 252 Ky. 99, 66 S. W. 2d 1; Dickson v. Dickson, 180 Ky. 423, 202 S. W. 891, L. R. A. 1918F. 765. * * *

"Adopting the above rules of testamentary construction and considering the words used by testator in their *'ordinary and usual'* acceptance, we cannot but conclude that he did not intend to include the life insurance in the phrase 'stocks, bonds, notes and other securities'; and that the two insurance policies, payable to the estate, were not intended for the grandson.

"Therefore, the most that the grandson, Alfred Joseph Ruh, could have claimed under the second provision of testator's will would have been $15,-

762.78, as above pointed out, had the widow not elected to renounce the said will.

"Allowing the widow her $750 exemption, as per section 1403, Kentucky Statutes, and taking the same from the $1,117.13, which represents what testator had on deposit in the bank and what was realized from the stock, crops, and farm implements after payment of funeral and other expenses, leaves a remainder of $367.13, and the widow is entitled to one-half of the $367.13, which is $186.56, and in addition thereto one-half of the $2,000 life insurance left to the decedent's estate, making a total of $1,933.56, to which must also be added $7,881.39, which latter sum is one-half of the $15,762.78, which otherwise would have gone to the grandson had not the widow elected to renounce the will. Therefore, the widow's share of the personalty is $9,814.95.

"It is apparent, therefore, that the grandson's estate has been cut in half by the widow's election to take her dower interest, and that instead of $15,762.78 he now receives $7,881.39, and his estate has been depleted in the sum of $7,881.39, and it is the contention of counsel for guardian of said grandchild that he is entitled to be compensated out of the personalty relinquished by the widow, one-half of the $2,000 life insurance which had been made to testator's estate, and which would have otherwise passed to the widow under the third clause of testator's will, together with one-half of the $367.13 which was left after the deduction of the widow's exemption of $750 from the cash live stock, and farm implements of the deceased, or, to be exact, the sum of $183.56, making the sum total of personalty relinquished by the widow available for compensation of the grandson, $1,183.56.

"It is also the contention of the counsel for the guardian of the grandson that as that is not sufficient, then the said grandchild is also entitled to be compensated out of the life estate in the two-thirds of the realty which the widow renounced.

"With reference to the claim of compensation of the grandson out of that portion of the estate relinquished by the widow, the rule seems to be that upon the renunciation of the will by the widow, the devise or legacy which the widow rejected is to

be applied in compensation of those whom her election disappoints. Woerner's Law Administration, volume 1, page 406, (3rd Ed.) sec. 119 and authorities, including the Kentucky cases of Timberlake v. Parish's Ex'r, 5 Dana (35 Ky.) 345, and McCallister v. Brand's Heirs, 11 B. Mon. (50 Ky.) 370.

"In Page on Wills, volume 2 (2d Ed.), is to be found the following rule, on page 2031: 'Where the beneficiary refuses to take under the will the property given to such beneficiary is taken from the devises or legacies to others unless there is sufficient intestate property to satisfy such claims. Where this is the case, the beneficiaries whose rights under the will are thus defeated, should be compensated if possible, by giving them the property which was refused by such beneficiary.' Also cases from many other jurisdictions are cited in the footnotes of the above text.

"As above pointed out, the election of the widow to renounce the will resulted in the reduction of the legacy of the grandson by the sum of $7,-881.39, and under the rule of compensation, supra, which rule the court adopts in this case, the grandson is entitled to be compensated, first, by receiving one-half of the personalty (after having deducted the widow's exemption of $750) which the widow would have been entitled to under the third paragraph of the will, but which she relinquished when she renounced the will; said sum being $1,183.56. This sum proving wholly inadequate, the grandson is entitled further to be compensated in a sum equivalent to the value of the widow's rejected life estate in two-thirds of the real estate. According to the pleadings, the total appraised value of the realty was $16,480. According to the pleadings the widow was born on November 18, 1865. Testator died on June 5, 1933, making the widow 68 years old at the time of the death of testator. The value of the widow's life estate in all the realty had she not rejected the will would have been 41.39 per cent, according to the Wigglesworth Table, or $6,-821. Having elected to take the widow's dower, she would be entitled to 13.80 per cent., or $2,274.24. The difference between what her life estate in all of the realty would have been worth had she not renounced the will, to wit, $6,821 and $2,274.24, the

value of her life estate in one-third of the realty, is the value of the two-thirds of the real estate renounced by the widow, to wit, $4,546.76, and is available for the purpose of compensating the grandson for the depletion of his estate by the widow's election to renounce. When this last sum is added to the $7,881.39, together with the $1,183.56, we find that the grandson, after having been thus compensated out of both the personalty and realty renounced by the widow in the sum of $13,611.71 which is still considerably short of the grandson's original legacy, and it is the earnest contention of counsel for the grandson that inasmuch as the personalty and realty relinquished by the widow is not sufficient to make the grandson whole, that he is further entitled to be compensated from the devisees and legatees.

## "Sequestration.

"It is urged by counsel for certain of the defendants (Florence Ruh Wagner, L. S. Wagner, her husband, and Elmer J. Ruh) that the doctrine of acceleration does not apply in this case, but that the doctrine of sequestration should, and in lieu of the acceleration of the remainders and the application of the rejected estate of the widow to compensate the grandson that the widow's rejection of her life estate in two-thirds of the realty should be sequestered; that is, held separate and apart under the orders of the court for the balance of her lifetime, and merely the income thereof in the meantime to be paid over for the benefit of the said grandchild. As authority for that position counsel relies on Sellick v. Sellick (1919) 207 Mich. 194, 173 N. W. 609; 5 A. L. R. 1621.

"From a careful reading of the case of Trustees Church Home v. Morris, supra, it appears that the doctrine of sequestration does not prevail in Kentucky. See American Law Institute's Restatement of Property, Tenative Draft No. 6, page 182. * * *

## "Contribution.

"We will now return to the contention of counsel for the guardian of Alfred Joseph Ruh, Jr., that inasmuch as the personalty and the interest in the realty relinquished by the widow is not sufficient to

make the grandson whole, that he is further entitled to be compensated by the other devisees and legatees. Section 2081, Kentucky Statutes, provides: 'When a widow's dower shall be taken, or her portion shall be made up, in whole or in part, from the estate devised to a devisee, such devisee shall have contribution on the principles of this article unless the will otherwise directs, or it is necessarily to be inferred therefrom that the testator intended the same to fall on such devisee.'

"It will be noted that under the will, supra, testator made no provision whatever to apply in the event the widow renounced the will, and the will contains no direction nor any language from which it can necessarily be inferred that the testator intended that any loss of the devise to the grandson in clause 2, occasioned by the widow's election to take her dower, should fall on the grandson. In view of these plain facts and the express provisions of section 2081, Kentucky Statutes, supra, the grandson is entitled to contribution for any such loss from the other devisees, and such contribution is to be had on the principles of article 2, chapter 64, Kentucky Statutes, which comprises sections 2073 to 2083, and deals exclusively with the subject-matter of contribution between devisees, heirs at law, and other distributees.

"It is the contention of counsel for the executors that when section 2081, supra, is construed in connection with section 2077, and other sections of the same article, that contribution does not apply to a person who is not an heir at law, and who is a specific legatee, such as is the guardian for Alfred Joseph in this particular case, and he relies on the case of Pusey's Trustee v. Wathen, 90 Ky. 473, 14 S. W. 418, 12 Ky. Law Rep. 425.

"Section 2077 provides that contribution shall take place between the heirs at law when the title to any bequest or devise shall prove invalid, but this section has no application to the facts in this case. In the present case *only devisees* are concerned, and in the instances where the article allows contribution to a devisee for a loss in his devise, the other legatees contribute to such loss in proportion to the value of the estate received by

them under the will. Section 2073, Kentucky Statutes.

"In view of the fact that the testator made no provision for the grandson in the event of the widow's renunciation, and in view of the further fact that her renunciation occasioned the grandson considerable loss, and also in view of the express provisions of section 2081, the grandson is entitled to contribution for any such loss from the other devisees, and such contribution is to be had on the principles of article 2, chapter 64, supra.

" 'If the renounced share is insufficient to compensate the disappointed beneficiary, the other devisees or legatees, at least such as are in the same class with him so far as priority of payment is concerned, must contribute pro rata to make up the deficiency.' Volume 1, section 119, Woerner's American Law of Administration, page 406.

"Since the devise in clause 2 of the will to the grandson and the devise to the testator's children and grandson in clause 4 are both specific devises of personalty under the principles of classification hereinbefore set out, they are of equal rank in the order of subjection, and they must *both* share in making the contribution. See Ballinger's Devisees v. Ballinger's Adm'r, 251 Ky. 405, 65 S. W. 2d 49.

*"It follows, therefore, that the grandson is entitled to contribution for such loss from the other devisees in proportion to the value of the estate received by them under the will, and in such loss the grandson, Alfred Joseph Ruh, will bear his like proportionate part. * * *"*

Such having been the rulings made upon the questions presented, the chancellor directed that an order be prepared in conformity therewith, which was done.

The appellants, executors, appeal from the awards of "compensation" and "contribution" made, while the Security Trust Company, as trustee for Alfred Joseph Ruh, has prayed a cross-appeal to so much of the decree as excludes the two Equitable Life Insurance policies, payable to the estate, from within the classification of "securities" given in trust under paragraph 2 of the will; and to so much of the decree as requires it, as trustee of the property bequeathed to Alfred Joseph Ruh,

to contribute and puts the grandson on the same basis as the devisees in remainder as regards the "contribution" to be made.

Being of the opinion, as stated, supra, that these contentions are well and properly answered by the reasoning and rule of this forceful opinion, with the holdings of which our views are in full accord, it is adopted by us, and the decree based thereon is affirmed, both on the appeal and cross-appeal.