## Talbott's Ex'r et al. v. Goetz.

May 13, 1941.

Gene Lair and Virgil Gaitskill, Jr., for appellants.

Bradley & Blanton for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER—Affirming.

Robert C. Talbott, a resident of Bourbon county, Kentucky, died testate in the year 1930. At the time of his death his family consisted of 5 children by a former marriage, and his wife Clementina whom he married in later life. The widow remarried and is known in this action as Clementina Talbott Goetz. Mr. and Mrs. Talbott had been living separate and apart for several years preceding his death.

On March 25, 1929, the deceased paid to his wife the sum of $5,000, upon delivery of which she executed a receipt which was in words and figures, as follows:

"Received of Robt. C. Talbott this March 25, 1929, New York Draft for the sum of $5000.00 to be used in making payments on real estate in Nashville Tennessee conveyed to the undersigned, the said $5000.00 to be credited on any written agreement as to property matters which the said Robt. C. Tal-

bott and the undersigned may enter into hereafter, and if no such agreement is entered into then to be credited on any claim of the undersigned for alimony, if any, or other claim, if any, against him or his estate, and if none be treated as an advancement and credit on any claim in the way of dower or distributable right, if any, in his estate, the said $5000 having been paid to the undersigned on the above terms and conditions for the above purpose.''

The second paragraph of the testator's will is in the following words and figures, towit:

''I have paid to and for my present wife since she has been living away from me large sums of money to live on and to buy property, most of which will be shown by my bank books and cancelled checks. If I leave her surviving me and undivorced, she shall have and take what the Statutes of Kentucky give to her and no more, but she shall be charged with an advancement of Five Thousand Dollars ($5,000.00) paid to her to buy real estate in Nashville, Tennessee, under agreement signed by her that this $5,000.00 shall be treated as an advancement out of her distributable share as surviving wife, and any other sums hereafter paid under similar agreement signed by her shall be likewise deducted from such distributable share as surviving wife. Beside the $5000.00 so evidenced by her said receipt, many other sums large, and small, to buy different kinds of property, including real estate, have been by me advanced to her, but I am only charging her with the $5000.00 so agreed in writing, to be treated as an advancement, and any sums hereafter paid and evidenced by similar receipts signed by her.''

The balance of the estate was otherwise disposed of and his sons-in-law, Honorable Virgil Chapman, and Wade H. Whitley were named executors of the will. Before final settlement of the estate Mr. Whitley died and Edna T. Whitley was appointed administratrix of his (Whitley's) estate. Among the claims proven against the estate of Mr. Talbott and paid by the executors was a note held by the Bourbon-Agricultural Bank & Trust Company, signed ''Clementina Talbott by Robert C. Talbott'' and ''Robert C. Talbott'' which note was in the principal amount of $5,000 upon which interest had accumulated to the amount of $122.57. In making

settlement of the estate the executors treated the $5,000 note together with the accumulated interest as not having been paid (though actually it had been paid) and reported a net balance remaining in the estate of $17,379.72. For the purpose of determining the amount to be distributed under the will the executors added to the $17,379.72 the sum of $5,000, representing the amount received by Mrs. Goetz on March 25, 1929, which made a total estate in their calculation of $22,379.72, one-half of which, namely $11,189.86, they interpreted as belonging to the widow, Mrs. Goetz, but against which they charged the sum of $5,000 aforesaid plus the amount of the above-mentioned note and interest making a total deduction of $10,122.57. They thereupon paid her the difference, viz., $1,057.29, for which they took her receipt. The widow elected to take under the will and filed this action against Mr. Chapman and Mrs. Whitley, the Maryland Casualty Company, and the United Fidelity and Guaranty Company, sureties on the bonds of the executors, alleging that the settlement of the executors was erroneous in that it illegally charged her with the amount of the aforesaid note and interest; that same should be surcharged; that the executors and bondsmen should be required to account to her for the sum of $750 as her exemption under Section 1403, Kentucky Statutes, and that under a proper accounting of said estate she was entitled to the total sum of $5,497.57.

Ethel Talbott Gaitskill and Ann Talbott Clayton, surviving daughters of Mr. Talbott, filed an intervening petition in which they took issue with the allegations of the petition, asserting that the $5,000 together with accrued interest thereon was the debt of the widow and that the $5,000 paid to her under the contract and referred to in the will should not be considered a part of the estate for the purpose of determining the distributable share of the widow and according to the calculations based upon their contention alleged that there would be due the widow no greater sum than $436.23.

Thereafter, the executors of Mr. Talbott's will filed their answer adopting the allegations of the intervening petitioners as their own. By reply plaintiff alleged that the proceeds of the $5,000 note payable to the Bourbon-Agricultural Bank & Trust Company was the identical $5,000 for which she had given the receipt and alleged that same was not her debt but that of Robert C. Tal-

bott, who had no authority to sign her name to the note, and that she was not bound thereby and asked that she be relieved of the payment of said note.

The following stipulation was filed, to-wit:

"That Robert C. Talbott, the decedent, did his banking business, during the year 1929, at the Bourbon-Agricultural Bank & Trust Company, of Paris, Kentucky.

"That the Short Credit Ledger No. 4 of said Bank shows that on March 15, 1929, there is a debit and credit of $5,000.

"That upon said same day a New York Draft was issued on the Hanover National Bank for $5,000.

"That the account of the said Robert C. Talbott does not show, during the year 1929, any other debit or credit of $5000."

The circuit court adjudged the $5,000 note payable to the bank, together with the accumulated interest in the sum of $122.57, was not the debt of Clementina Talbott Goetz and that she should not be charged therewith, but that said sum should be allowed as a credit to the executors on their expenditures. It was then adjudged that the widow of decedent was entitled to $750 exemption before any distribution was made and that the $5,000 paid to the widow on March 25, 1929, should be added to the balance of the personal property for the purpose of determining the value of the estate in which the widow was entitled to share. The defendants below have appealed from that judgment but concede that the court was without error in adjudging the $5,000 note together with accumulated interest was not the debt of appellee and admit it was solely the debt of decedent.

Since the will provides that the appellee shall take what the Statutes of Kentucky give to her and no more, her share of the estate must be determined by the laws of descent and distribution of the Commonwealth in the same manner as if the testator had died intestate. Page on Wills, Vol. 2, Section 937, page 1574. In re Johnson's Estate, 92 Minn. 8, 99 N. W. 212; Bennett v. Bennett, 282 Ill. 266, 118 N. E. 391; In re Fay's Estate, 196 Iowa 1099, 196 N. W. 42; Cf. Richardson v. Trubey, 240 Ill. 476, 88 N. E. 1008.

In Page on Wills, supra, the rule is expressed thus: "A gift to a surviving spouse of his 'lawful portion' or of 'whatever the law allows him,' or any similar form of gift, passes such interest as the surviving spouse would have taken if there had been no will."

It is first contended by appellants that the $5,000 was an advancement and as such could not be considered a part of the estate for the purpose of determining the amount to be allotted to the widow. In support of this contention they call attention to Section 1408, Kentucky Statutes, which reads as follows:

"Advancements made to distributees shall not be taken as a part of the decedent's personal estate in estimating the distributable share of the widow therein."

In making this contention appellants do not take into consideration the preceding section of the statute, namely 1407, which defines an advancement to be a gift made by a parent to a child or a grandparent to a grandchild. Since both sections of the statute must be read together the application of Section 1408 must be confined to advancements as defined in 1407. The law of advancements has never been applied to gifts made by a decedent to his wife in his lifetime. It has been universally defined as an irrevocable gift, not required by law, made by a parent, during his lifetime, to his child, with the intention on the part of the donor that such gift shall represent a part or the whole of the portion of the donor's estate that the donee would be entitled to on the death of the donor intestate. I Am. Jur. page 715; Section 1407, Kentucky Statutes.

Thus it will be seen that no transaction between a husband and wife can be considered as an advancement or be subject to the laws governing advancements. The mere fact that the $5,000 which was delivered to Mrs. Goetz in 1929 was called an advancement, both in the receipt and in the will, does not make it such; because no matter what the intention of the donor, he cannot make that an advancement which is not made so by law. Shawhan v. Shawhan, 10 Bush 600; Cleaver v. Kirk, 3 Metc. 270. Therefore, Section 1408 Kentucky Statutes, has no application to the transaction involved in this case.

The delivery to the wife of the $5,000 was a partial payment to her in anticipation of a final settlement of property rights between her and her husband. The husband retained legal control of the property, to be exercised in the future to the extent that he could remove the condition that it was to be accounted for and make the delivery of the property an absolute gift. Having retained legal control of the property to that extent, the property was never completely severed from his estate and remained a part thereof until his death. This view is substantiated by the fact that the will treated the delivery of the $5,000 as an advancement payment ''out of'' appellee's share of the estate as surviving widow; all of the parties to the action treated it as an ''advancement'' out of appellee's share of the estate as surviving widow; that being true, it cannot logically be argued that a part of a share is not likewise a part of the whole of which the share is a portion. We therefore conclude that the chancellor did not err in adjudging the $5,000 to be a part of the estate for the purpose of determining the widow's distributable share of the estate.

It is next contended by appellants that the court erred in allowing the widow the sum of $750 before dividing the estate between the widow and the other distributees. They argue that under Section 2132, Kentucky Statutes, as amended, the surviving widow is precluded from the exemption allowance provided for in Section 1403, Kentucky Statutes, because the sections are in conflict, and since the act amending Section 2132 re-enacted the entire section and became effective at a date later than the effective date of Section 1403, the latter, to the extent of a conflict, was repealed.

Section 1403 provides for an exemption of $750 to be set apart to the widow by the appraisers of the estate from the personal property or money on hand or in the bank of the deceased; and that said $750 shall be exempt from distribution and sale. Section 2132 provides, insofar as personal property is concerned, that the wife shall have an absolute estate in one-half of the surplus personalty left by the deceased husband. Appellants do not point out the alleged inconsistency and we are of the opinion that there is none. If it is the contention of appellants that that part of Section 1403 which provides that $750 in money or property be set apart to the widow before any distribution is made has the effect of

allotting to the widow more than one-half the surplus personalty left by the deceased husband as provided in Section 2132, it is clearly without merit; because the surplus personalty is the personalty remaining after the debts, funeral expenses, and widow's exemption have been deducted from the gross personalty possessed by the decedent at the time of his death. Cf. Ruh v. Ruh, 270 Ky. 792, 110 S. W. (2d) 1097, 1105.

Since it conforms to the views herein expressed, the judgment of the lower court is affirmed.

Whole court sitting.